2002 ND 30

**David Lee OLSON, Plaintiff
and Appellee,**

v.

**Mary Ann OLSON, Defendant
and Appellant.**

**No. 20010156.**

Supreme Court of North Dakota.

Feb. 20, 2002.

John C. Irby, Burgum and Irby, Casselton, N.D., for defendant and appellant.

Duane R. Breitling, Ohnstad Twichell, P.C., Fargo, N.D., for plaintiff and appellee.

MARING, Justice.

[¶ 1]   Mary Ann Olson appeals from a judgment dated April 20, 2001, arguing the trial court erred in determining the value of marital property and in calculating her child support obligation.   We affirm the trial court's property valuation, but we reverse the trial court's child support determination and remand for recalculation in accordance with the child support guidelines.

I

[¶ 2]   David and Mary Ann Olson were married on March 3, 1980.   At the time of the divorce, David was 41 years old and Mary Ann was 42 years old.   Two children were born of the marriage, Joshua, who was 18 at the time of the divorce, and Michael, who was 15.

[¶ 3]   David commenced the action for divorce on August 23, 1999.   At a hearing held on October 26, 1999, the parties orally stipulated to a number of matters.   As part of these stipulations, Mary Ann received primary physical custody of Joshua and David received primary physical custody of Michael.   The parties agreed that the child support obligations would cancel each other out, leaving no child support obligation owing either way until the date Joshua became ineligible for child support.   At that date, Mary Ann would owe child support to David.   The amount of the child support payments would be determined under the child support guidelines with her income fixed at minimum wage.   The parties also agreed each party would be entitled to one-half of the value of Northland Security Insurance Services ("Northland Security").   Under the terms of the stipulation, David would purchase Mary Ann's share of Northland Security from her.   The parties could not, however, agree on the value of the business.   Consequently, a hearing was held to determine the value of Northland Security on December 7, 2000.

[¶ 4]   At the hearing, the trial court heard testimony from Kenneth Swanson and Roy Webb regarding the value of Northland Security.   Additionally, the trial court received as evidence the deposition of Earl Ross, in which he explained a formula for determining the value of Northland Security.   Each of these experts based their value determinations on the stipulated amount of the business's annual renewals, $34,642.59.   According to

Swanson, Northland Security was worth 0.9 times its annual renewals, or $31,178.73. Webb stated the value of Northland Security was 12 to 18 times its monthly renewals, or between $34,642.56 and $51,963.84. Mary Ann's counsel and David's counsel each provided different interpretations of the formula explained by Ross in his deposition testimony. Under Mary Ann's counsel's interpretation, the value of Northland Security was between $59,181.09 and $75,058.88. Under David's counsel's interpretation, the value of Northland Security was $44,385.78.

[¶ 5] In its Memorandum Opinion, the trial court found the formula explained by Ross to be the most accurate method for determining the value of Northland Security. The court adopted, as the value of Northland Security, the interpretation of Ross's testimony provided by David's counsel in Plaintiff's Exhibit 5. According to this exhibit, the value of Mary Ann's share was equal to one-half of $44,385.78, minus one-half of Northland Security's secured business debt of $14,500.00. Thus, the trial court determined David was to pay Mary Ann $14,942.89 for her share of Northland Security. A judgment reflecting this finding was filed on April 20, 2001, and Mary Ann appealed.

II

[¶ 6] On appeal, Mary Ann argues the trial court erred in finding the value of her half of Northland Security was $14,942.89 because Plaintiff's Exhibit 5 does not accurately reflect Ross's testimony.

[¶ 7] The value a trial court places on marital property depends on the evidence presented by the parties. *See Fox v. Fox*, 2001 ND 88, ¶ 22, 626 N.W.2d 660. Because a trial court is in a far better position than an appellate court to observe demeanor and credibility of witnesses, we presume a trial court's property valuations are correct. *See Hoverson v. Hoverson*, 2001 ND 124, ¶ 13, 629 N.W.2d 573. We will not reverse a trial court's findings on valuation and division of marital property unless they are clearly erroneous. *See Corbett v. Corbett*, 2001 ND 113, ¶ 12, 628 N.W.2d 312. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence the reviewing court is left with a definite and firm conviction a mistake has been made." *Kautzman v. Kautzman*, 1998 ND 192, ¶ 8, 585 N.W.2d 561. "A choice between two permissible views of the evidence is not clearly erroneous if the trial court's findings are based either on physical or documentary evidence, or inferences from other facts, or on credibility determinations." *Hoverson*, at ¶ 13. Marital property valuations within the range of evidence presented to the trial court are not clearly erroneous. *See id.; Fox*, at ¶ 19; *Wald v. Wald*, 556 N.W.2d 291, 295 (N.D.1996).

[¶ 8] In this case, the trial court received evidence on the value of Northland Security from three expert witnesses. Based on this evidence, the value of Northland Security ranged anywhere from $31,178.73 to $75,058.88. The trial court found that $44,385.78 was the most accurate value of Northland Security. This finding falls within the range of evidence presented to the trial court and is not clearly erroneous. *See Hoverson*, 2001 ND 124, ¶ 15, 629 N.W.2d 573.

[¶ 9] Mary Ann also contends it was clearly erroneous for the trial court to subtract half of Northland Security's secured debt from the value of her share of the business. At trial, however, Swanson testified that the amount of this debt must be subtracted when determining the value

of Northland Security. Thus, there was evidence in the record supporting the subtraction of the debt and we are not left with a definite and firm conviction a mistake has been made. The trial court's decision to subtract half the debt from the value of Mary Ann's share is not clearly erroneous. *See Fox*, 2001 ND 88, ¶ 14, 626 N.W.2d 660.

[¶ 10] In her final argument relating to the value of her share of Northland Security, Mary Ann contends the trial court erred by not giving her interest on her share of Northland Security for the months preceding the parties' divorce when David had sole control of the business. The stipulation the parties entered into on October 26, 1999, provided David would purchase Mary Ann's share of Northland Security for one-half of the total value of the business. The stipulation made no provision for interest, and Mary Ann never argued to the trial court or to this Court that the stipulation was unconscionable or otherwise unenforceable. *See Weber v. Weber*, 1999 ND 11, ¶¶ 12–13, 589 N.W.2d 358 (listing grounds for finding a settlement agreement unenforceable). Therefore, it was not clearly erroneous for the trial court to decline to provide Mary Ann interest on the value of her share.

### III

[¶ 11] Mary Ann argues the trial court erred in computing her child support obligation because no information concerning the parties' respective incomes was presented to the trial court.

[¶ 12] "Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard." *Heinz v. Heinz*, 2001 ND 147, ¶ 16, 632 N.W.2d 443. A trial court errs as a matter of law when it fails to comply with the child support guidelines. *See id.* A proper finding of net income is essential to a correct child support determination. *See id.* at ¶ 17. A trial court must clearly explain how it determined the amount of net income and the corresponding level of child support. *See id.* A stipulation which results in a child support obligation less than that required by the child support guidelines violates public policy and will not be enforced. *See id.*

[¶ 13] David contends the argument raised by Mary Ann is similar to an argument we rejected in *Heinz*. In *Heinz*, the parties stipulated that the child support obligor's net monthly income was $1,596. *Heinz*, at ¶ 17. Under N.D. Admin. Code § 75–02–04.1–10, this resulted in a child support obligation of $469. *Heinz*, at ¶ 17. The appellant argued the stipulation was invalid because there were no specific figures supporting the child support obligation. *Id.* We rejected this argument, reasoning "counsel does not argue the stipulation itself is a miscalculation of income resulting in less support than required by the guidelines, but argues only that the trial court erred in accepting the parties' stipulation and not requiring litigation and adjudication of [the obligor's] net monthly income." *Id.* Unlike the parties in *Heinz*, however, the parties in this case never stipulated to an amount of net income. Without any figures concerning the parties' net incomes in the record, it is impossible to determine if the stipulation in this case complies with the child support guidelines. *See Heinz*, at ¶ 17 ("A proper finding of net income is essential to determine the correct amount of child support under the guidelines . . . .").

## IV

[¶ 14] We, therefore, affirm the valuation of Mary Ann's share of Northland Security, but we reverse the child support award and remand for recalculation in accordance with the child support guidelines.

[¶ 15] GERALD W. VANDE WALLE, C.J., WILLIAM A. NEUMANN, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.