2006 ND 120

**Pamela Jane KOSTELECKY, Plaintiff, Appellant and Cross–Appellee**

**v.**

**Kim Wayne KOSTELECKY, Defendant, Appellee and Cross–Appellant.**

**No. 20050231.**

Supreme Court of North Dakota.

June 1, 2006.

Mary E. Nordsven, Hardy, Maus & Nordsven, P.C., Dickinson, N.D., for plaintiff, appellant and cross-appellee.

LaRoy Baird III (argued) and Bonnie L. Storbakken (on brief), Bismarck, N.D., for defendant, appellee and cross-appellant.

SANDSTROM, Justice.

[¶ 1] Pamela Jane Kostelecky, now known as Pamela Barrett ("Barrett"), appeals, and Kim Wayne Kostelecky ("Kostelecky") cross-appeals from a district court judgment distributing their marital property and awarding spousal support to Barrett. We affirm the district court's valuation of the parties' marital property; however, because we conclude the district court failed to adequately explain its award of spousal support and distribution of marital property, we reverse and remand for further proceedings.

I

[¶ 2] Barrett and Kostelecky were married on November 19, 1997, and had no children from their marriage. In March 2004, Barrett sued for divorce. At the November 2004 divorce trial, Barrett testified she was 44 years old, this was her third marriage, and she had custody of two minor children from a previous marriage. Kostelecky was 49 years old and had also been previously married.

[¶ 3] In March 2005, the district court issued a memorandum opinion and findings of fact, conclusions of law, and order for judgment, and on April 6, 2005, a judgment was entered. On April 8, 2005, Barrett moved to vacate the judgment, claiming it did not reflect all of the findings from the court's memorandum opinion. The court subsequently vacated the initial judgment and entered supplemental findings, which incorporated additional provisions from the court's memorandum opinion. A final judgment was entered on June 1, 2005.

[¶ 4] In its final judgment, the district court awarded Kostelecky property valued

at $1,429,994.06 and debts of $735,506.63. The court awarded Barrett property valued at $262,857.00 and debts of $106,257.03. The court awarded Kostelecky a farming and ranching operation that he had brought into the marriage, including its existing assets and debts, and the court awarded Barrett a business she had started prior to the marriage, Masterpiece Gifts and Floral, and its corresponding assets and debts.

[¶ 5] The court found Barrett entered the marriage with only nominal assets and had prospered during the marriage, and Kostelecky entered the marriage with an agricultural operation that had been expanded during the marriage but also had incurred corresponding debt. The court found the parties' marriage was a short-term marriage and, as a result, each party was entitled to keep the net worth they had prior to the marriage. The court also found Barrett made contributions to the marriage that needed to be recognized and rewarded with spousal support. The court ordered Kostelecky to pay Barrett spousal support of $90,000 over six years, at the rate of $15,000 per year without interest, payable in monthly or annual payments.

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 28–27–01. The appeal is timely under N.D.R.App.P. 4(a).

II

[¶ 7] Barrett argues the district court erred in its valuation of various items of the parties' marital property.

[¶ 8] A district court's valuation of property is a finding of fact, subject to the clearly erroneous standard of review. *Amsbaugh v. Amsbaugh*, 2004 ND 11, ¶ 12, 673 N.W.2d 601.

The value a trial court places on marital property depends on the evidence presented by the parties. *See Fox v. Fox*, 2001 ND 88, ¶ 22, 626 N.W.2d 660. Because a trial court is in a far better position than an appellate court to observe demeanor and credibility of witnesses, we presume a trial court's property valuations are correct. *See Hoverson v. Hoverson*, 2001 ND 124, ¶ 13, 629 N.W.2d 573. We will not reverse a trial court's findings on valuation and division of marital property unless they are clearly erroneous. *See Corbett v. Corbett,* 2001 ND 113, ¶ 12, 628 N.W.2d 312. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence the reviewing court is left with a definite and firm conviction a mistake has been made." *Kautzman v. Kautzman*, 1998 ND 192, ¶ 8, 585 N.W.2d 561. "A choice between two permissible views of the evidence is not clearly erroneous if the trial court's findings are based either on physical or documentary evidence, or inferences from other facts, or on credibility determinations." *Hoverson*, at ¶ 13.

*Olson v. Olson*, 2002 ND 30, ¶ 7, 639 N.W.2d 701.

[¶ 9] A district court's marital property valuations are not clearly erroneous if they are within the range of the evidence presented. *Amsbaugh*, 2004 ND 11, ¶ 12, 673 N.W.2d 601. Furthermore, an owner of real property may testify as to the value of land without any further qualification or special knowledge. *See Anderson v. Anderson*, 368 N.W.2d 566, 569 (N.D.1985). Ultimately, the district court is in a better position than this Court to judge the credibility and observe the demeanor of witnesses and to determine property values. *Amsbaugh* at ¶ 12.

[¶ 10] In this case, the district court had to choose between Barrett's proffered valuations and Kostelecky's proffered valuations of the marital property. The district court's findings on the value of the parties' marital property are within the range of the evidence presented at trial. Although Barrett argues Kostelecky made a number of errors in his valuations and his testimony was speculative, we will not reweigh the evidence and judge the credibility of the witnesses. We are not left with a definite and firm conviction a mistake has been made, and we conclude the district court's valuation of the marital property was not clearly erroneous.

III

[¶ 11] Barrett argues the district court erred in the division of the parties' marital property, and Kostelecky argues the court erred in awarding Barrett spousal support.

[¶ 12] When a divorce is granted, the district court must make an equitable distribution of the parties' marital property and debts. N.D.C.C. § 14–05–24(1). When distributing marital property, all of the parties' assets must be considered to insure the division is equitable. *Dvorak v. Dvorak*, 2005 ND 66, ¶ 21, 693 N.W.2d 646. After including all of the parties' marital assets, the district court must consider the *Ruff–Fischer* guidelines in its distribution of the parties' assets. *Bladow v. Bladow*, 2003 ND 123, ¶ 7, 665 N.W.2d 724. Under the *Ruff–Fischer* guidelines, the court must consider:

the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the

property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material. *Id.* (quoting *Weigel v. Weigel,* 2000 ND 16, ¶ 6, 604 N.W.2d 462).

[¶ 13] The district court is not required to make specific findings on each *Ruff–Fischer* factor, but it must explain its rationale for its determination. *Bladow,* 2003 ND 123, ¶ 7, 665 N.W.2d 724. A property division need not be equal to be equitable, but any substantial disparity must be explained. *Id.* at ¶ 5. This Court has also effectively recognized that liquidation of an ongoing farming operation is ordinarily a last resort. *Gibbon v. Gibbon,* 1997 ND 210, ¶ 7, 569 N.W.2d 707.

[¶ 14] Property division and spousal support are interrelated and intertwined and often must be considered together. *Striefel v. Striefel,* 2004 ND 210, ¶ 17, 689 N.W.2d 415; *Schoenwald v. Schoenwald,* 1999 ND 93, ¶ 6, 593 N.W.2d 350. Spousal support determinations are findings of fact, and the district court's decision on spousal support will not be set aside unless it is clearly erroneous. *Schoenwald,* at ¶ 7 (quoting *Hogue v. Hogue,* 1998 ND 26, ¶¶ 24–25, 574 N.W.2d 579). In making a spousal support determination, the district court must consider the relevant factors under the *Ruff–Fischer* guidelines. *Ingebretson v. Ingebretson,* 2005 ND 41, ¶ 7, 693 N.W.2d 1; *Schoenwald,* at ¶ 7.

[¶ 15] A majority of this Court recently eliminated the requirement for a district court to make a specific finding of a "disadvantaged spouse" before awarding spousal support. *Sack v. Sack,* 2006 ND 57, ¶ 12, 711 N.W.2d 157; *but see id.* at ¶¶ 19–34 (Sandstrom, J., dissenting). The majority in *Sack* nevertheless explicitly emphasized, "[W]e elect to dispose of the 'disadvantaged spouse' doctrine and reemphasize the importance of a comprehensive analysis under the *Ruff–Fischer* guidelines when determining the appropriateness of rehabilitative spousal support. In doing so, we do not retreat from the reasons and rationale for rehabilitative support." *Id.* at ¶ 12.

A

[¶ 16] In awarding Barrett spousal support, the court found "[Barrett] made contributions to the marriage which must be recognized and rewarded with some spousal support." The court then awarded Barrett $90,000 in spousal support, at the rate of $15,000 for each of the six years the parties were married, payable over six years in monthly or annual payments without interest.

[¶ 17] The district court's award of spousal support to Barrett was to "recognize[] and reward[]" her contributions to the marriage. Barrett made no request to the district court for rehabilitative spousal support, and instead she had requested an additional $200,000 in cash to make the property distribution equitable. Rehabilitative spousal support is awarded to equalize the burdens of divorce or to restore an economically disadvantaged spouse to independent status, by providing an opportunity for a disadvantaged spouse to seek education, training, or experience that will enable the spouse to become self-supporting. *Striefel,* 2004 ND 210, ¶ 16, 689 N.W.2d 415; *Rustand v. Rustand,* 379 N.W.2d 806, 807 (N.D.1986).

[¶ 18] The district court's award of spousal support only to "recognize[] and reward[]" Barrett's contributions to the marriage is not sufficient for this Court to review whether an award of rehabilitative support is appropriate. This Court has said an award of spousal support may be

appropriate to recognize a spouse's role in contributing to the development of the other spouse's earning capacity during the marriage. *See Hanson v. Hanson,* 404 N.W.2d 460, 466 (N.D.1987) (spousal support appropriate after twenty-two year marriage, where substantial assets did not exist, husband's earning ability was substantially greater than wife's, and wife aided husband during marriage by providing primary financial support for family while husband attended college); *Weir v. Weir,* 374 N.W.2d 858, 864 (N.D.1985) (spousal support appropriate after twenty-three year marriage, in absence of presently-divisible substantial marital assets, to provide equitable sharing of the overall reduction in the parties' separate standards of living, and to recognize wife's role in contributing to husband's earning capacity).

[¶ 19] However, unlike the district courts in *Weir* and *Hanson,* the district court here found the parties' marriage was short-term. Moreover, both parties have ongoing potentially income-generating businesses, and assets exist for distribution. The district court's award of spousal support appears to be more in the nature of property distribution rather than a determination of the need for rehabilitative support. However, this Court will not speculate on the district court's rationale in awarding spousal support. We conclude the district court's spousal support award to recognize and reward Barrett's contributions to the marriage is not sufficient for us to understand the basis for the district court's spousal support award under the *Ruff–Fischer* guidelines. We therefore reverse and remand to the district court for further explanation of its spousal support award.

B

[¶ 20] In distributing the parties' marital estate, the district court explained:

[Barrett] seems to be worth about $100,000 and [Kostelecky] seems to be worth about $650,000. [Barrett] entered this marriage with only nominal assets and, through diligence, has prospered somewhat. [Kostelecky] has expanded his agricultural operation and thereby created corresponding debt. Neither won the lottery; neither has found a life of luxury.

So now I've thought long and hard about the *Ruff–Fischer* guidelines and what should fairly happen as these parties exit this unfortunate alliance. The brevity of this marriage persuades me the parties should leave as they came and take with them what they brought.

[¶ 21] In its initial findings of fact, the district court found Barrett and Kostelecky had a net worth of $851,087. 40. The court further found that Kostelecky had a net worth before marriage of $617,840, and Barrett had a net worth before marriage of negative $20,000. The court found the marriage was a short-term marriage, and thus each party was entitled to keep the net worth they had prior to the marriage. The court then stated "[t]hat based upon consideration of all of the *Ruff–Fischer* guidelines, a fair and equitable division of property and debts would be" to award Kostelecky $1,429,994.06 in total assets and $735,506.63 in total debts, and to award Barrett $262,857.00 in total assets and $106,257.03 in total debts. The court found "[t]hat this division of property and debts results in an equitable division of the increase in the parties' net worth during the marriage."

[¶ 22] Because we are reversing and remanding the spousal support award for further proceedings and because spousal support is intertwined with the property distribution, we also remand the property distribution.

851

C

[¶ 23] Barrett also claims that the district court improperly delegated the decision to distribute some of the parties' personal property to Kostelecky. In its memorandum opinion, the court stated:

I deem it impossible to somehow fairly distribute the personal property of the parties, items which he allegedly gave to her children as gifts or personal property located at the lake cabin. Instead, I think [Kostelecky] should read this over a few times, overcome petty rancor and give [Barrett] those small wares and goods which she wants, ever recalling that he doesn't have to repurchase one-half of his land.

Although the district court's final judgment did ultimately award certain items of personal property to Kostelecky, because we are remanding the property distribution for further consideration, the district court should consider any specific requests the parties have regarding the distribution of any particular items of personal property at that time.

IV

[¶ 24] We affirm the district court's valuation of the parties' marital property, but reverse and remand for further proceedings on the spousal support award and distribution of the parties' marital property.

[¶ 25] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.