2013 ND 174

**Dawn R. HOLTE, Plaintiff, Appellee and Cross–Appellant**

v.

**Nathan W. HOLTE, Defendant, Appellant and Cross–Appellee.**

No. 20120312.

Supreme Court of North Dakota.

Sept. 30, 2013.

H. Malcolm Pippin (argued), Williston and Charlotte J. Skar (on brief), Fargo, ND, for plaintiff, appellee and cross-appellant.

Faron E. Terry, Minot, ND, for defendant, appellant and cross-appellee.

KAPSNER, Justice.

[¶ 1]  Nathan Holte appeals from a district court judgment granting him a divorce from Dawn Holte, distributing their property, and awarding Dawn Holte spousal support. We affirm the spousal support award and reverse and remand the property distribution.

I

[¶ 2]  Nathan and Dawn Holte were married in 1989 and have one adult child. The couple lived in northwest North Dakota, where Nathan Holte worked for the railroad for much of the marriage. He quit his employment shortly before trial due to health issues, but testified he would be able to return to work after trial. Dawn Holte has worked at a local medical center for the past 32 years, and she also cleans houses.

[¶ 3]  In 2008, Nathan Holte's parents established an irrevocable trust and assigned to it mineral rights located in Williams County. Nathan Holte; his parents, collectively; and his two brothers were named beneficiaries of the trust, each having one-quarter interests. In 2009 and 2010, Nathan Holte's share of the trust generated approximately $150,000 in income.

[¶ 4]  In 2010, Dawn Holte filed for divorce citing irreconcilable differences. Nathan Holte moved into an investment home his mother had recently purchased, and he spent approximately $41,000 to furnish the home. At trial, the court heard evidence from both parties that the marriage had been over for nearly ten years. Dawn Holte testified that although she filed for divorce, Nathan Holte first stated he wanted a divorce. Dawn Holte testified that once the oil money started coming in, Nathan Holte went "overboard" spending money on various items. She further testified that Nathan Holte "firmly believed that [the oil income] was his family's money and that I had no title to it." In contrast, Nathan Holte testified that he "believe[d] that the dissolution of the marriage was her doing" because Dawn Holte withheld her affection from him. He also testified that Dawn Holte was not "entitled to have any share of that [trust] money."

[¶ 5]  The district court granted the couple a divorce. The court found the net marital estate to be worth $271,225.74 and awarded Dawn Holte $177,471.60 and Na-

than Holte $93,754.14 in net assets. After dividing up the marital estate, the court awarded Dawn Holte $1,000 per month of spousal support for ten years, and it awarded Dawn Holte one-half of Nathan Holte's future trust income and ordered Nathan Holte to regularly provide an accounting of the trust income.

[¶ 6] Nathan Holte appealed, and Dawn Holte cross-appealed.

## II

[¶ 7] Nathan Holte argues "[t]he trial court's award of $1,000 per month spousal support to Dawn [Holte] is clearly erroneous."

[¶ 8] A district court may award spousal support by taking into consideration the circumstances of the parties and by applying the *Ruff–Fischer* guidelines. *Dronen v. Dronen*, 2009 ND 70, ¶ 41, 764 N.W.2d 675; *see also* N.D.C.C. § 14–05–24.1. Under the *Ruff–Fischer* guidelines, the court considers:

> [T]he respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

*Rebel v. Rebel*, 2013 ND 116, ¶ 7, 833 N.W.2d 442 (citation and quotation omitted); *see Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952), *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966).

[¶ 9] A spousal support award is a finding of fact, which is reviewed under the clearly erroneous standard of review. *Dieterle v. Dieterle*, 2013 ND 71, ¶ 31, 830 N.W.2d 571 (citation omitted). "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing the entirety of the evidence, this Court is left with a definite and firm conviction a mistake has been made." *Lynnes v. Lynnes*, 2008 ND 71, ¶ 12, 747 N.W.2d 93 (citation omitted). Similar to a property distribution, a court is not required to make specific findings on each factor if this Court can determine the reasons for the court's decision. *Lindberg v. Lindberg*, 2009 ND 136, ¶ 28, 770 N.W.2d 252 (citation omitted).

[¶ 10] " 'Property division and spousal support are interrelated, and often must be considered together.' " *Dronen*, 2009 ND 70, ¶ 41, 764 N.W.2d 675 (quoting *Mellum v. Mellum*, 2000 ND 47, ¶ 19, 607 N.W.2d 580). " 'A difference in earning power is an important factor in both spousal support and property division determinations.' " *Dronen*, at ¶ 41 (quoting *Mellum*, at ¶ 19). " 'An award of spousal support must be made in light of the supporting spouse's needs and ability to pay, and maintaining relative standards of living.' " *Dronen*, at ¶ 41 (quoting *Wald v. Wald*, 556 N.W.2d 291, 297 (N.D.1996)).

### A

[¶ 11] Nathan Holte argues the district court erred because it "compared the parties' gross income rather than their net income," and the court "was clearly mistaken concerning Dawn's *ability* to earn more income."

[¶ 12] The district court's findings considered the parties' gross and net incomes in its award. The court recognized that property division and spousal support are interrelated, and noted that: "Spousal support is appropriate when a substantial disparity between the earning abilities of the spouses exist. Where property division

alone is not sufficient to maintain each party at the same standard of living, spousal support may be ordered to more equitably allocate the reduction in standard of living."

[¶ 13] The district court made findings under the *Ruff–Fischer* guidelines and determined that a substantial disparity between Dawn Holte and Nathan Holte's income earning abilities existed. The court found the conduct of each party during the marriage, the health and physical condition of the parties, and the fault factors were equal. The court found that the earning ability, station in life, and financial circumstance factors all favored Dawn Holte; and, in contrast, the only factor that favored Nathan Holte was the source of property factor. The court noted, "even at a minimum, [Nathan Holte] has the ability to earn at least $70,000.00 per year versus [Dawn Holte's] $38,500.00 per year."

[¶ 14] The court's findings are in accord with the evidence. Dawn Holte presented evidence that after working for the same employer for over thirty years, in conjunction with her cleaning income, she earned approximately $38,500 per year. Nathan Holte testified that although he recently quit a high-paying job due to health reasons, he could "probably" earn up to $70,000 a year based on at least one job offer he has received. He testified he would go back to work shortly after trial.

[¶ 15] The court also considered Nathan Holte's ability to pay in the context of his net pay. The court noted the *Ruff–Fischer* guidelines applied to spousal support, and the court's previous finding on the financial circumstances of the parties stated:

The Court finds that [Nathan Holte] has the ability to and has earned more money than [Dawn Holte], both in the form of employment and also as a 1/4 benefi-

ciary of trust income, but also has more monthly expenses. When reviewing the testimony and 8.3 statement, the Court finds that [Nathan Holte] has more monthly income than monthly debts, and [Dawn Holte's] monthly debts exceed her monthly income. This factor favors [Dawn Holte].

[¶ 16] Though Nathan Holte asserts the district court "determin[ed] Dawn's needs based on an inflated list of expenses that far exceed the expenses the parties jointly incurred while living together," the district court is in a better position to make these determinations. *See Kostelecky v. Kostelecky*, 2006 ND 120, ¶ 9, 714 N.W.2d 845 (citation omitted). The record shows that the court considered the *Ruff–Fischer* guidelines and the "needs of the spouse seeking support and the supporting spouse's needs and ability to pay" in making its award. *Parisien v. Parisien*, 2010 ND 35, ¶ 7, 779 N.W.2d 130 (citation omitted).

[¶ 17] Although the district court could have explained its rationale in greater depth, we are able to adequately understand the basis for its spousal support award.

B

[¶ 18] Nathan Holte argues that the award was erroneous because Dawn Holte is not a "disadvantaged" spouse, "but rather has been greatly enriched" by the divorce and has the ability to earn more income by applying for one of the "high-paying jobs" in western North Dakota's "booming energy economy."

[¶ 19] "The words 'disadvantaged spouse' may be a handy label but it is not a term of legal significance." *Becker v. Becker*, 2011 ND 107, ¶ 28, 799 N.W.2d 53 (quoting *Sack v. Sack*, 2006 ND 57, ¶ 12, 711 N.W.2d 157). Here, the district court

did not determine whether Dawn Holte is a disadvantaged spouse; rather, in deciding whether to award spousal support, the court correctly considered the *Ruff–Fischer* guidelines and "the needs of the spouse seeking support and the ability of the other spouse to pay." *See Becker*, at ¶ 28; *Hoverson v. Hoverson*, 2013 ND 48, ¶ 14, 828 N.W.2d 510 (citing *Sack*, at ¶ 12 (directing spousal support focus at *Ruff–Fischer* guidelines rather than separate freestanding "disadvantaged spouse doctrine")).

[¶ 20] In analyzing the *Ruff–Fischer* guidelines, the court found the conduct of each party during the marriage, the health and physical condition of the parties, and the fault factors were equal. The court found that the earning ability, station in life, and financial circumstance factors all favored Dawn Holte; and, in contrast, the only factor that favored Nathan Holte was the source of property factor.

[¶ 21] Nathan Holte asserts Dawn Holte has the ability to earn more money, but this Court has rejected similar arguments. In *Becker*, this Court affirmed the district court after it rejected a husband's argument that because his former spouse had the ability to utilize her Master's Degree in speech pathology to earn a higher income, she was capable of earning up to $50,000 per year as opposed to the approximately $15,000 per year she was currently earning from other employment. *Becker*, 2011 ND 107, ¶¶ 31–32, 799 N.W.2d 53. This Court noted that the district court heard evidence that the former spouse had not worked in the speech pathology field for nearly 20 years, and she had medical concerns that may impact her ability to reenter the speech pathology field. *Id.* at ¶ 31. This Court also noted that although evidence existed that the former spouse could earn more money, "[a] district court's choice 'between two permissible

views of conflicting evidence is not clearly erroneous.'" *Id.* at ¶ 32 (quoting *Pearson v. Pearson*, 2009 ND 154, ¶ 10, 771 N.W.2d 288).

[¶ 22] In this case, the district court heard evidence that Dawn Holte has worked for the same employer for approximately 32 years. Moreover, evidence was presented that she has "troubles with [her] neck" that require her to constantly move around, which her current job allows her to do. Although Nathan Holte argues that "[i]f she wants income that exceeds $38,500 per year, all she has to do is look in the local 'Shopper' to find a multitude of opportunities to earn much, much more," he has provided us with no caselaw or authority to suggest that Dawn Holte must quit her established, 32–year position at the medical center in search of a potentially higher paying job in which she may not be trained or qualified for. Like in *Becker*, the district court here heard two versions of the evidence, and it awarded Dawn Holte spousal support of $1,000 per month for ten years.

[¶ 23] Record evidence supports the district court's spousal support award, and we are not left with a definite and firm conviction a mistake has been made. We affirm the district court's spousal support award requiring Nathan Holte to pay $1,000 per month to Dawn Holte for ten years.

### III

[¶ 24] Nathan Holte argues the district court's property distribution is clearly erroneous, and he advances a number of arguments in support. The district court found the net marital estate to be worth $271,225.74, and it awarded Dawn Holte $177,471.60 in net assets and Nathan Holte $93,754.14 in net assets.

[¶ 25] Under N.D.C.C. § 14–05–24(1), a district court must make an equitable division of the parties' marital estate in a divorce action. "In making an equitable distribution of marital property, a court must consider all of the parties' assets." *Kosobud v. Kosobud,* 2012 ND 122, ¶ 6, 817 N.W.2d 384. "All of the assets of the marital estate, regardless of source, must be considered to ensure an equitable division of property." *Lynnes,* 2008 ND 71, ¶ 14, 747 N.W.2d 93 (citations omitted). After including all of the parties' marital property and debts in the marital estate, a court must consider the factors emanating from *Ruff,* 78 N.D. 775, 52 N.W.2d 107, and *Fischer,* 139 N.W.2d 845, in its property distribution. But, if substantial debts are excluded from the marital estate, this Court is unable to determine whether the district "court would have reached the same result in allocating the assets and debts had it correctly included the debts as part of the marital estate before allocating the debts between the parties." *Lynnes,* at ¶ 22 (quotation and citation omitted).

[¶ 26] "A district court's valuation of property is presumed correct, and the evidence presented must be viewed in the light most favorable to the district court's findings of fact." *Lynnes,* 2008 ND 71, ¶ 16, 747 N.W.2d 93 (citing *Korynta v. Korynta,* 2006 ND 17, ¶ 13, 708 N.W.2d 895). A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or, although there is some evidence to support it, on the entire record, we are left with a definite and firm conviction a mistake has been made. *Lynnes,* at ¶ 12.

### A

[¶ 27] Nathan Holte argues the property valuation was clearly erroneous because his tax burden was not included in the property and debt distribution.

[¶ 28] On the day of the trial, Nathan Holte received his 2010 tax return from his accountant, indicating he owed approximately $20,000 in taxes. He further testified that his accountant determined approximately $9,000 of the tax debt could be eliminated if Nathan and Dawn Holte jointly refiled their taxes. Nathan Holte's attorney requested that the debt be included in the property and debt statement. Although the tax return was admitted into evidence, the debt apparently was not considered by the district court. Dawn Holte agrees, noting that "Nathan's counsel asked that the $20,000 tax obligation be included in the property and debt distribution, but the court did not rule on the issue during trial, and the tax obligation was excluded in the property and debt distribution."

[¶ 29] Here, according to the district court's calculation, Dawn Holte received a net award of $177,471.60 and Nathan Holte received a net award of $93,754.14. In *Lynnes,* we remanded because the excluded debt would have reduced one party's net award by nearly ten percent. 2008 ND 71, ¶ 23, 747 N.W.2d 93. In this case, the approximately $20,000 tax debt would reduce Nathan Holte's net award by over twenty percent; accordingly, it is a substantial amount. We agree that the court erred by not including this debt.

[¶ 30] Because a substantial marital debt was excluded from the marital estate, we are unable to tell whether the district court would have reached the same result in allocating the assets and debts had it included the tax debt. *See Lynnes,* 2008 ND 71, ¶ 23, 747 N.W.2d 93.

### B

[¶ 31] Nathan Holte argues "[t]he trial court's award of one-half of Nathan's inter-

est in future income from the ... Mineral Trust to Dawn [Holte] is clearly erroneous," and he advances a series of arguments related to the trust.

[¶ 32] "Trusts are generally included as marital property subject to equitable distribution by the trial court." *Paulson v. Paulson*, 2010 ND 100, ¶ 19, 783 N.W.2d 262 (citing *Fox v. Fox*, 1999 ND 68, ¶ 14, 592 N.W.2d 541). "[L]ike pensions or retirement plans, a trial court may divide a trust by awarding the present value of the benefits." *Paulson*, at ¶ 19 (citing *van Oosting v. van Oosting*, 521 N.W.2d 93, 98 (N.D.1994)). However, "[t]he trial court may also award a percentage of future payments when present valuation is too speculative or there are insufficient assets for a present division." *Paulson*, at ¶ 19 (citations omitted). "In order to be considered a property asset in the marital estate, the property must be a present property interest, rather than a mere expectancy." *Id.* (citing 27B C.J.S. *Divorce* § 852 (2009)).

1

[¶ 33] Nathan Holte argues that "[a] vested interest in trust property is regarded as a property interest," but he "has no present interest in the trust corpus." Nathan Holte appears to argue that because the trust owns the property, or minerals, and he only receives a "one-fourth share of the trust income generated from the trust corpus," he only has an interest if income is distributed.

[¶ 34] Here, the district court found "that there is a valid present interest in the income derived from the Trust" and that awarding Dawn Holte "a percentage of future payments is appropriate" to "clear up any speculation as to value." We agree. The record reflects, and Nathan Holte testified on cross-examination, that he has a present vested interest in income

from an irrevocable trust. Nathan Holte has received income from the trust since at least 2009. He acknowledged that, short of his death, "[t]o the best of my knowledge there is nothing that can take away my 25 percent...."

[¶ 35] Moreover, the court heard evidence that the present value of Nathan Holte's interest is speculative. Though at trial he had a fixed one-fourth interest in "[a]ll royalties and other income" from the trust, the value of his interest, which is based on mineral production levels, mineral values, and other factors, will fluctuate. Tod Maleckar, a Certified Professional Landman, performed a mineral appraisal for Dawn Holte. Maleckar's valuation considered current production rates, among other things, and was entered into evidence. On cross-examination, Nathan Holte's attorney asked Maleckar: "So, whether these [production rates] are going to continue is ... to some degree speculative whether they will continue in the future at these rates?" Maleckar agreed that "they definitely won't continue at these rates. I mean, they will be going down." Nathan Holte further recognized the speculative value in his post-trial brief, noting: "We then look to an attempt to place a value on the trust as a potential income. Whether or not Nathan [Holte] will continue to receive benefits from the trust is speculative. There is no certainty that the mineral trust will continue to be productive."

[¶ 36] The district court's finding that Nathan Holte has a present property interest in the trust that is too speculative to value is supported by the evidence, and we do not have a definite and firm conviction the district court erred in awarding Dawn Holte one-half of Nathan Holte's trust income.

[¶ 37] Nathan Holte argues the "trust should be treated like inherited property and should be set aside for [him]."

[¶ 38] We disagree. "We have repeatedly held that property brought into the marriage by one party, and separate property acquired by gift, inheritance, or otherwise, must be included in the marital estate and is subject to distribution." *Ulsaker v. White*, 2006 ND 133, ¶ 12, 717 N.W.2d 567 (citation omitted). In distributing property, "the origin of property is not the sole or, necessarily, the controlling factor under the *Ruff–Fischer* guidelines." *Id.* (citation omitted). *See also Murphy v. Rossow*, 2010 ND 162, ¶ 20, 787 N.W.2d 746 (noting that "all property of both spouses, no matter how acquired or how owned, becomes part of the marital estate and is subject to distribution" in affirming a district court judgment equally splitting a mineral estate).

[¶ 39] Here, in analyzing the *Ruff–Fischer* factors, the district court recognized that "the property came from [Nathan Holte's] parents, which favors [Nathan Holte] as to this factor." Though the district court's findings could be more detailed, the court recognized the property was acquired during the marriage, considered the origin of the property, and weighed this factor in favor of Nathan Holte. We conclude Nathan Holte has not met his burden of showing the district court erred by not "set[ting] aside" the property for him. *See Anderson v. Anderson*, 368 N.W.2d 566, 569–70 (N.D. 1985) (reversing district court property and debt distribution because it excluded the husband's inherited farmland and mineral assets from the marital estate).

[¶ 40] Nathan Holte argues he should not be required to provide "an onerous accounting every month" to Dawn Holte documenting the trust income.

[¶ 41] The district court's judgment awarding Dawn Holte "one half of [Nathan Holte's] interest in future income of the ... Trust" states:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that [Nathan Holte] should be required to provide [Dawn Holte] with the following documentation every month to verify the accuracy of the income payments of the ... Trust issued to [Dawn Holte]:

1. Copies of all incoming checks and stubs from the oil companies;

2. Copies of all outgoing checks from the Trust; and

3. Monthly statements of the Trust with respect to checking, savings or other financial or business documentation.

[Dawn Holte] shall also have access to and copies of all tax information, including year-end 1099 statements and tax returns.

[¶ 42] We have previously cautioned that when "distributing marital property, a court should try to disentangle the parties' financial affairs to reduce further conflict, litigation, and rancor between them." *Fox*, 1999 ND 68, ¶ 17, 592 N.W.2d 541 (citations omitted). Here, however, Nathan Holte testified that he is a co-trustee of the trust. In this role, he "handles the funds for the trust" and is responsible for all fund transfers: "[T]he money comes in at the end of the month. I take the total amount that's in the account, subtract two thousand dollars from that ... I split it all up into four, transfer it into four different accounts [for the beneficiaries], keep all the receipts, withdrawals and deposit

slips." Nathan Holte testified that after making the transfers, he contacts the other beneficiaries to inform them of the transfer and the amount. Nathan Holte further testified that he handles the trust's taxes, writes checks for necessary expenses, and does not "anticipate any changes in the future" to this arrangement.

[¶ 43] Although Nathan Holte considers the district court's required accounting "onerous," he is, in essence, already performing the majority of the duties the district court ordered. Without this documentation, Dawn Holte will not be able to determine whether Nathan Holte is complying with the judgment. We conclude Nathan Holte has not shown that the district court erred.

### 4

[¶ 44] Nathan Holte argues the district court erred because its "award to Dawn [Holte] was not expressly limited to [his] present one-fourth share of the trust income."

[¶ 45] This Court has often said that "[m]arital property ordinarily is valued as of the date of trial." *Hoverson*, 2013 ND 48, ¶ 9, 828 N.W.2d 510 (citing *Ulsaker*, 2006 ND 133, ¶ 13, 717 N.W.2d 567). "Common sense dictates that marital property be valued as of the date of trial, rather than the date of distribution." *Grinaker v. Grinaker*, 553 N.W.2d 204, 208–09 (N.D.1996). However, in certain circumstances, a property's value at trial may be too speculative to determine. *Paulson*, 2010 ND 100, ¶ 19, 783 N.W.2d 262 (citations omitted).

[¶ 46] The district court awarded Dawn Holte "one half of [Nathan Holte's] interest in future income of the . . . Trust" because the value of Nathan Holte's interest in the trust is too speculative. However, trial evidence was presented that Na-

than Holte's one-fourth interest in the trust increases upon the death of his parents or if one of the other beneficiaries dies without issue. Under either of these scenarios, Nathan Holte's present one-fourth interest increases. By not specifying that Nathan Holte's payments to Dawn Holte remain fixed to his interest in the trust as of the date of trial, the district court erred. The amount and number of future payments Nathan Holte will receive from the trust is speculative, but the percentage or fractional interest of Nathan Holte's present interest in the trust, as of the date of trial, is not.

### C

[¶ 47] Nathan Holte argues "[t]he Trial Court's calculation of the parties' net worth is clearly erroneous and necessary corrections disclose that Dawn [Holte] was awarded 75 percent of the parties' net worth." Specifically, Nathan Holte argues the valuation was clearly erroneous because the district court erroneously: (1) found that the $41,000 he spent to furnish his mother's home was money taken from the marital estate; (2) included $18,000 in unnecessary repairs to the marital home; and (3) included $2,000 permanently left in the trust account and valued Nathan Holte's interest in the trust at $5,855.

[¶ 48] Nathan Holte asserts "[t]he trial court misunderstood the [$41,000 furniture] transaction." The record contains evidence that after the parties separated, Nathan Holte purchased $41,000 of furniture and appliances with money from the martial estate to furnish his mother's six-bedroom rental home. He testified that it was his idea to furnish the house, and he did not discuss the purchases with Dawn Holte. Nathan Holte acknowledged at trial he did not "provide Dawn with any receipts or documentation of any kind re-

garding these purchases," either when the purchases were made or during pre-trial discovery. To make the purchases, Nathan Holte testified that he borrowed $25,000 from a retirement account and $16,000 from a local bank. He asserted the entire transaction resulted in a "wash" because he is responsible for the debt.

[¶ 49] Nathan Holte also argues the district court erroneously included unnecessary repairs to the marital home. Nathan Holte testified that he listed the home's value at $110,000 based on the appraisal, which identified a range of $98,000 to $125,000. Dawn Holte valued the house at $100,000 and testified that $18,000 worth of repairs to the roof, the septic system, and doors were necessary. At trial, Dawn introduced evidence of the necessary repairs. She testified that the septic system problem was "not a new situation. We have been having trouble with that for like ten years ... where we will get back up laundry water." Dawn Holte also introduced cost estimates to fix the roof and doors, and she testified the appraiser was aware of all of the needed repairs. In contrast, Nathan Holte asserts that the repairs may never happen; thus, they should not be considered when determining the net marital estate. The district court heard the evidence and valued the home at $110,000, accepting Nathan Holte's value of the house and Dawn Holte's value for the repairs.

[¶ 50] Finally, in his pre-trial Rule 8.3 disclosure statement, Nathan Holte listed a $2,000 balance in the trust account and valued his interest in the trust at $5,855. Dawn Holte assigned "unknown" values for these items. At trial, the trust's income tax filings were admitted into evidence, showing Nathan Holte received approximately $150,000 from the trust between 2009 and 2010. This income calls into question Nathan Holte's asserted value of $5,855.

[¶ 51] We have previously held that "trusts may be divided at the time of divorce either by awarding the present value of the benefits or, ... when present valuation is too speculative, by awarding a percentage of future payments." *Fox*, 1999 ND 68, ¶ 14, 592 N.W.2d 541 (citations omitted). Thus, "[t]he potential benefits should not be valued as assets in the marital estate when the receipt of future benefits is too speculative." *Paulson*, 2010 ND 100, ¶ 19, 783 N.W.2d 262 (citations omitted). Here, the district court found the value of Nathan Holte's interest in the trust was speculative and awarded Dawn Holte a percentage of future payments. The court erred by also including the $7,855 in the marital estate.

[¶ 52] With the exception of erroneously including the $7,855 in the marital estate, Nathan Holte has not shown that the remainder of the district court's valuation was incorrect. We have repeatedly said that the district court is in a better position to make credibility and valuation determinations, and we will not substitute our judgment for that of the district court. *See, e.g., Kostelecky*, 2006 ND 120, ¶ 9, 714 N.W.2d 845 (citation omitted).

[¶ 53] We remand for determination of the distribution of the marital estate after a proper calculation of the martial estate has been made by including the tax debt and excluding the $7,855, representing the account balance and Nathan Holte's asserted value of the trust. We further instruct the district court to specify that Dawn Holte's percentage or fractional interest of future trust income is limited to one-half of Nathan Holte's trust interest as of the date of trial.

## IV

[¶ 54] Nathan Holte argues "[t]he trial court's explanation for the sub-

stantial disparity in the property distribution is clearly erroneous."

[¶ 55] After including all of the parties' marital property and debts in the marital estate, a court must consider the factors emanating from *Ruff*, 78 N.D. 775, 52 N.W.2d 107, and *Fischer*, 139 N.W.2d 845, in its property distribution. Though a property division need not be equal to be equitable, the district court must explain a substantial disparity. *Kosobud*, 2012 ND 122, ¶ 6, 817 N.W.2d 384. A district court's property distribution is a finding of fact, and this Court will not reverse the distribution unless the district court's findings are clearly erroneous. *Id.* "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence the reviewing court is left with a definite and firm conviction a mistake has been made." *Id.*

[¶ 56] The district court calculated the net marital estate to be worth $271,225.74. It awarded Nathan Holte $93,754.14 in net assets and Dawn Holte $177,471.60 in net assets. Further, the court awarded Dawn Holte "one-half of [Nathan Holte's] interest in future income" from the trust. The court later awarded Dawn Holte spousal support of $1,000 per month for ten years. After the court considered the *Ruff–Fischer* factors, it acknowledged that "a substantial disparity in the property and debt division" existed. The district court then listed four reasons it found the distribution to be equitable:

First of all, while the Court has awarded [Dawn Holte] 50% of [Nathan Holte's] interest in future income from the Holte Trust, the Court did not take into account income [Nathan Holte] received for the years 2009 and 2010 which totals over $150,000.00. That money was acquired during the course of the marriage but was not provided for in the 8.3 filing.

In addition, as noted above, [Nathan Holte] has a significantly higher earning ability than [Dawn Holte], and the Court finds that the distribution is equitable based on that factor along with the remainder of the *Ruff–Fischer* Guidelines.

Thirdly, there was some testimony that [Nathan Holte] is receiving rental income from his mother's home where he resides. While the Court is not convinced that is the case, it is undisputed that [Nathan Holte] took $41,000.00 from the marital estate to furnish that home, and is receiving money in the form of rent until he recaps the $41,000.00. That also was not included in the property and debt distribution.

Finally, the parties separated in October 2010 with each party in essence taking with them the property and debts which were distributed. The Court finds that the distribution is equitable based on these reasons.

[¶ 57] Considering the constrained information the court was presented, the "court's explanation for the disparity in the property distribution is sufficient to understand the rationale for its decision...." *Hoverson*, 2013 ND 48, ¶ 12, 828 N.W.2d 510. We conclude the substantial disparity, with the exception of the erroneously excluded tax debt and erroneously included $7,855 trust value, has been adequately explained.

V

[¶ 58] We deny Dawn Holte's request for costs and attorney fees for a frivolous appeal under N.D.R.App.P. 38. We have considered the parties' additional arguments, including Dawn Holte's cross-appeal, and consider them to be without merit or unnecessary for our decision.

## VI

[¶ 59] We affirm the spousal support award and reverse and remand the property distribution.

[¶ 60] GERALD W. VANDE WALLE, C.J., EVERETT NELS OLSON, S.J., and MARY MUEHLEN MARING, J., concur.

[¶ 61] The Honorable EVERETT NELS OLSON, S.J., sitting in place of CROTHERS, J., disqualified.

SANDSTROM, Justice, concurring and dissenting.

[¶ 62] For reasons largely set forth in my dissents in *Sack v. Sack,* 2006 ND 57, 711 N.W.2d 157, and *Becker v. Becker,* 2011 ND 107, 799 N.W.2d 53, I would reverse the spousal support as well, and remand the entire case.

[¶ 63] DALE V. SANDSTROM