2017 ND 96

**Dianna L. HOLM, Plaintiff and Appellant**

v.

**Thomas J. HOLM, Defendant and Appellee**

No. 20160299

Supreme Court of North Dakota.

Filed 4/25/2017

Rachel Gehrig (argued) and Jessica L. Busse (appeared), P.O. Box 1817, Fargo, N.D. 58107–1817, for plaintiff and appellant.

Leslie J. Aldrich, 1018 First Avenue North, Fargo, N.D. 58102–4602, for defendant and appellee.

VandeWalle, Chief Justice.

[¶ 1] Dianna Holm appealed from a judgment granting her a divorce from Thomas Holm and dividing their marital property. We conclude the district court's treatment as compensation of dividends received from stock purchased from Thom-

as Holm's employer, and the court's valuation and award of the stock, are not clearly erroneous. We affirm the judgment.

I

[¶ 2] The parties were divorced in June 2016 after a 24–year marriage. One of the parties' major assets was stock they purchased from Thomas Holm's employer which amounted to a ten percent ownership interest in the closely-held company. The district court found the annual stock dividends were part of Thomas Holm's compensation from the business. The court valued the stock at $25,000, the amount the parties had paid for it, and awarded the stock to Thomas Holm. This resulted in a net property distribution to Thomas Holm of $76,240.07 and a net property distribution to Dianna Holm of $77,440.07. The court denied Dianna Holm's subsequent motion for amended findings and for a new trial.

II

[¶ 3] The issues raised by Dianna Holm in this appeal concern the district court's treatment, valuation, and award of the stock purchased from Thomas Holm's employer.

[¶ 4] In Adams v. Adams, 2015 ND 112, ¶ 13, 863 N.W.2d 232, we said:

When a divorce is granted, the district court makes an equitable distribution of the parties' property and debts. N.D.C.C. § 14–05–24(1). This Court reviews a district court's distribution of marital property as a finding of fact, and will not reverse unless the findings are clearly erroneous. McCarthy v. McCarthy, 2014 ND 234, ¶ 8, 856 N.W.2d 762. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all the evidence, we are left with a definite and firm convic-

tion a mistake has been made." Id. (quoting Hoverson v. Hoverson, 2013 ND 48, ¶ 8, 828 N.W.2d 510). We view the evidence in the light most favorable to the findings, and the district court's factual findings are presumptively correct. McCarthy, at ¶ 8. Valuations of marital property within the range of the evidence presented are not clearly erroneous. Dvorak v. Dvorak, 2005 ND 66, ¶ 20, 693 N.W.2d 646. A choice between two permissible views of the evidence is not clearly erroneous if the district court's findings are based either on physical or documentary evidence, or inferences from other facts, or on credibility determinations. Fox v. Fox, 2001 ND 88, ¶ 14, 626 N.W.2d 660.

A

[¶ 5] Dianna Holm argues the district court erred in finding that the annual dividends received from the stock constituted additional compensation for Thomas Holm's employment.

[¶ 6] In 2001 Thomas Holm was hired as sales manager at B & F Fastener Supply in Fargo. The employment agreement detailed his $36,000 base wage, his commissions from sales, and his option to purchase up to ten percent of the company's stock. It is undisputed that the company is a closely-held corporation. Thomas Holm began exercising the stock option in 2002, and purchased $5,000 per year of the stock using marital funds for five consecutive years to reach the ten percent maximum ownership interest allowed under the agreement. Thomas Holm was required to be employed by the company to own the stock, and the agreement contained numerous limitations on the voluntary and involuntary transfers of stock ownership. The annual dividend in 2014 was approximately $38,693 and in 2015 was approximately $28,686. Thomas Holm testified he

would not have accepted his position with the company without the stock option and he considered the stock dividends as part of his compensation from employment.

[¶ 7] Dianna Holm argues the dividends cannot be considered additional compensation under Thomas Holm's employment contract because the provision for the option to purchase company stock does not appear under the "Compensation" section of the agreement. She argues that the dividends are therefore marital property subject to division, and the distributions should have been divided between the parties. The district court, in its post-trial order, noted that Thomas Holm considered the dividends to be part of his compensation, and in interpreting the employment contract as a whole, see N.D.C.C. § 9–07–06, reasoned:

> As this Court stated, the employment agreement, entitled Employment Stock Option and Noncompete Agreement, had to be construed as a single document. Contracts need to be interpreted as a whole to give effect to each of its provisions. Egeland v. Cont'l Res., Inc., 2000 ND 169, ¶ 10, 616 N.W.2d 861. In construing this document as one, it is clear that the stock option was restricted to full-time employees. It is clear that the stock could not be for investment or for distribution. The distributions are tied to how well the company does. And how the company does is tied to some extent how Defendant performs.

[¶ 8] The district court's decision is supported by Wald v. Wald, 556 N.W.2d 291 (N.D. 1996). In Wald the parties were joint owners of stock in the closely-held corporation that employed the husband. Id. at 293. As part of the marital property division, the wife sought to acquire one-half of all stock distributions because "this method would preserve the stock's value as an income-producing asset for both parties." Id. at 295. We rejected her argument:

> This Court has acknowledged the authority of trial courts to structure an appropriate form of payment in lieu of dividing shares of stock. See, e.g., Klitzke v. Klitzke, 308 N.W.2d 385, 388 (N.D. 1981). But Marion Wald's argument ignores that she would in effect be receiving Roger Wald's salary from Ames as part of her property distribution. Roger originally received dividends from Ames as compensation for his work as its employee and as profits from the investment. The distribution was later changed to the form of wages based on the corporate accountant's advice. We decline to sanction a method that seeks as an unmodifiable property distribution 50 percent of a spouse's salary from employment. We conclude the trial court did not err in refusing to award Marion Wald 50 percent of the distributions from the Ames stock as part of the property distribution.

Id. at 295–96.

[¶ 9] In Wald the dividends were always viewed as compensation for the husband's work, but the written description of the distributions was changed to wages, presumably for tax reasons. The purpose of the distributions remained the same however they were characterized. Wald demonstrates that the written description of stock dividends in an employment agreement is not necessarily determinative of their nature, but the underlying purpose of the dividends is the primary consideration in marital property cases.

[¶ 10] We conclude the district court's finding that the stock dividends were part of Thomas Holm's compensation is not clearly erroneous and the court did not err in refusing to order that the dividends be shared in some manner by the parties.

### B

■ [¶ 11] Dianna Holm argues the district court erred in valuing the stock at $25,000, the amount the parties paid for it. She contends the court should have valued the stock under the method set forth in a section of the employment agreement which outlines "Stipulated" or "Calculated Value" alternatives for valuation.

[¶ 12] Section 6.7.3 of the employment agreement set forth options for determining the purchase price of stock upon the employee's death or disability, or termination from employment, or "a proposed voluntary or involuntary transfer" occurring after December 31, 2009. If the company and the employee could not agree on a "Stipulated Value," the agreement set forth methods for determining the "Calculated Value" of the stock:

> The Calculated Value shall be determined by the Company's regularly retained public accountant, or if no such accountant is regularly retained, by an independent public accountant satisfactory to the Company and Employee, or his legal representative, or if the Company has no regularly retained public accountant, and if a single independent accountant cannot be agreed upon within sixty (60) days of the first written proposal served upon the other party suggesting an accountant, then the accountant shall be chosen by the Company's attorney.... The Calculated Value shall equal the Company's liquidation value ("Liquidation Value") plus the value of the Company's good will ("Good Will") as such terms are defined in Sections 6.7.3.1 and 6.7.3.2 below, multiplied by the percentage of the Company's stock then being sold.

■ [¶ 13] The value given to marital property by the district court depends on the evidence presented by the parties. See, e.g., Kostelecky v. Kostelecky, 2006 ND 120, ¶ 8, 714 N.W.2d 845; Amsbaugh v. Amsbaugh, 2004 ND 11, ¶ 12, 673 N.W.2d 601; Olson v. Olson, 2002 ND 30, ¶ 7, 639 N.W.2d 701. Thomas Holm and his employer did not stipulate to the value of the stock in this case, and the "Calculated Value" method in the agreement contemplates a calculation by a public accountant. Dianna Holm offered no expert evidence from an accountant about calculated value. After the close of evidence at trial, Dianna Holm requested that the court apply section 6.7.3 of the agreement in valuing the stock, but the court explained it could only rely on evidence in the record. Dianna Holm offered no evidence of the value of the stock or any evidence to allow the court to apply section 6.7.3 of the employment agreement. Although Thomas Holm testified the value of the stock was much more than $25,000, minority shares in a close corporation are frequently of little value. See Wald, 556 N.W.2d at 295; Fisher v. Fisher, 546 N.W.2d 354, 357 (N.D. 1996).

[¶ 14] We conclude the district court's valuation of the stock at the $25,000 purchase price is within the range of evidence presented and is not clearly erroneous.

### C

■ [¶ 15] Dianna Holm argues the district court's property distribution is inequitable because the shares of stock should have been divided equally.

[¶ 16] The employment agreement contains numerous limitations on the sale of the stock, including a provision allowing the company an option to purchase stock awarded to a spouse in a divorce action. Even if the company chose to not repurchase the stock, its value is dependent in part on the work performance of Thomas Holm. A division of stock could lead to future disputes between the parties con-

cerning Thomas Holm's work performance and its effect on the value of the stock and the annual dividends. We have often said courts in divorce cases should try to disentangle the parties' financial affairs to reduce further conflict, litigation, and rancor between them. See, e.g., Holte v. Holte, 2013 ND 174, ¶ 42, 837 N.W.2d 894; Brown v. Brown, 1999 ND 199, ¶ 28, 600 N.W.2d 869; Fox v. Fox, 1999 ND 68, ¶ 17, 592 N.W.2d 541; Fisher v. Fisher, 1997 ND 176, ¶ 33, 568 N.W.2d 728. The parties' earning capacities are similar, the court found no fault on the part of either party, decided an equal distribution was appropriate, and awarded Dianna Holm a slightly larger share of the net marital estate.

[¶ 17] We conclude that the district court's refusal to award Dianna Holm shares of the stock did not render the property distribution inequitable, and the court's division of marital property is not clearly erroneous.

### III

[¶ 18] The judgment is affirmed.

[¶ 19] Gerald W. VandeWalle, C.J.

Jerod E. Tufte

Daniel J. Crothers

Lisa Fair McEvers

Kapsner, Justice, concurring in the result.

[¶ 20] I concur in the result.

[¶ 21] I respectfully disagree that the district court's finding the annual dividends from the stock held by Thomas Holm in his employing company are part of his compensation is not clearly erroneous. In making that finding, the district court made a legal error in its interpretation of the Employment, Stock Option and Noncompete Agreement between Thomas Holm and the employing corporation. Both the district court and the majority opinion rely on the fact that Thomas Holm testified that he considered dividends part of his compensation. But, "[i]nterpretation of a contract is a question of law, and on appeal this Court independently examines and construes the contract to determine if the district court erred in its interpretation." Irish Oil & Gas, Inc. v. Riemer, 2011 ND 22, ¶ 11, 794 N.W.2d 715. However, on the state of this record, the legal error does not make the final distribution of property inequitable.

[¶ 22] The agreement is a 15–page document which clearly delineates between Thomas Holm's expectations as an employee, including compensation, and his rights to become, and limitations on his status as, a shareholder. "Compensation" is specifically defined as Base Wage, Incentive Pool Participation, Other Benefits (qualified fringe benefit plans which the company determines), Short Term and Long Term Disability Insurance, and Business Expenses. Dividends are not included in the definition of compensation. Rather than giving effect to each provision of a contract, the district court and the majority opinion are blurring the distinct provisions of a clearly articulated contract.

[¶ 23] It is true that the agreement required Thomas Holm to sell his shares back to the company if he terminated his employment and otherwise limited his ability to sell his shares. But the contract specifically contemplated the possibility that the shares could be subject to a property division order in a divorce. It provides:

6.5 Limitation on Voluntary and Involuntary Transfers of Employee's Stock. Employee shall not sell, assign, pledge, or otherwise transfer, gift, or dispose of any or all of the Company stock he acquires, whether voluntarily, involun-

tarily, or pursuant to the entry of any order, decree or directive of any administrative body, legislative branch, court or other judicial agency, including but not limited to those entered in connection with a marriage dissolution, requiring the transfer or sale of all or any part of his Company stock to another person or entity, without first giving written notice to the Company of his intention to do so. The notice so required shall indicate the number of such shares to be transferred or otherwise disposed of ("Subject Shares") and the terms of such transfer or disposition, including the name of the proposed transferee. Upon receipt of such notice, the Company, or its assigns, shall have, for a period of ninety (90) days following the date on which such notice is received, an option to purchase all, but not less than all of the Subject Shares at the price and according to the terms set forth in Sections 6.7 and 6.8 below. If the Company, or its assigns, do not elect to purchase all of the Subject Shares, then Employee may, at his election, consider all or any part of the elections inoperative and of no effect, and Employee shall be free to sell or otherwise dispose of the Subject Shares upon the terms and to the person specified in such notice. If Employee has not sold or otherwise disposed of the Subject Shares in accordance with the notice within one hundred twenty (120) days of the expiration of the Company's option, then Employee shall again be required to comply with the procedures set forth in this paragraph 6.5 before selling or otherwise disposing of all or any portion of the Subject Shares.

[¶ 24] In other words, like any other asset, these shares were subject to division by the district court if necessary for an equitable division of property. The contractual limitation on such division was the corporation's ability to buy back the shares at a price established by the agreement.

[¶ 25] While I agree with Dianna Holm's legal argument that the dividends are not compensation under the clear language of the contract, I concur in the result of the majority opinion.

[¶ 26] Presumably, Dianna Holm hoped to acquire future dividends by receiving part of the stock in the corporation that had been purchased during the marriage. If she had, she might have been subject to a buy-out by the corporation under the provisions quoted above. The problem with her position is set out in Part II, B of the majority opinion. The district court had to divide marital property based on the evidence presented to it. Using the only value the district court had received in evidence to value the corporate stock, the district court divided the marital property roughly equally. Therefore, I concur in the result.

[¶ 27] Carol Ronning Kapsner