FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT
FEBRUARY 16, 2023
STATE OF NORTH DAKOTA

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2023 ND 23

Heather L. Kitzan,

Plaintiff and Appellant

v.

Justun J. Kitzan,

Defendant and Appellee

and

State of North Dakota,

Statutory Real Party in Interest

## No. 20220110

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Bobbi Brown Weiler, Judge.

AFFIRMED.

Opinion of the Court by Jensen, Chief Justice.

Carey A. Ziemann Goetz, Bismarck, ND, for plaintiff and appellant; submitted on brief.

Micheal A. Mulloy, Bismarck, ND, for defendant and appellee; submitted on brief.

**Jensen, Chief Justice.**

[¶1]   Heather Kitzan appeals from a judgment entered following a bench trial in her divorce action against Justun Kitzan asserting the district court erred in including certain items as marital property, in distributing the marital estate, and in denying her spousal support. We affirm the district court's judgment.

I

[¶2]   Heather and Justun Kitzan married in July 1999, and were separated in 2020. Heather Kitzan filed for divorce on October 19, 2020. An interim order required Heather Kitzan to make monthly mortgage payments on the marital home and provided her with exclusive use of the home. The parties stipulated to a parenting plan for their two children.

[¶3]   Heather Kitzan is employed and has a monthly gross income of approximately $4,500. Justun Kitzan is employed and has a monthly gross income of $4,785. Justun Kitzan and his sister testified he moved out of the marital home on September 8, 2020, while Heather Kitzan maintained he left in June 2020. The parties owned several bank accounts, a marital home, a farm, and a business, JT Inflatables. Justun Kitzan submitted exhibits providing financial statements for the value of the home, the farm, JT Inflatables, and other bank accounts.

[¶4]   The parties agreed that funds from various sources of income were commingled by Heather Kitzan into multiple accounts; some accounts that were closed, and some that were opened after the parties separated. After separation, Heather Kitzan received Paycheck Protection Program ("PPP") loans and a state water grant for the farm operation and JT Inflatables. She also withdrew funds from her personal retirement accounts.

[¶5]   The district court found the parties separated September 8, 2020 and earned similar incomes. The court also found Heather Kitzan engaged in "financial misappropriation and possible fraud[.]" The court chose Justun

Kitzan's valuations for the home, farm, and JT Inflatables and determined those assets were marital property. The court awarded Heather Kitzan an equity payment of $30,000 which resulted in total net estates of $36,818.57 for her and $68,111.47 for Justun Kitzan. The court denied Heather Kitzan's request for spousal support.

## II

[¶6]   This Court reviews a district court's distribution of marital property as a finding of fact under a clearly erroneous standard:

> A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all the evidence, we are left with a definite and firm conviction a mistake has been made. We view the evidence in the light most favorable to the findings, and the district court's factual findings are presumptively correct. Valuations of marital property within the range of the evidence presented are not clearly erroneous. A choice between two permissible views of the evidence is not clearly erroneous if the district court's findings are based either on physical or documentary evidence, or inferences from other facts, or on credibility determinations.

*Berdahl v. Berdahl*, 2022 ND 136, ¶ 6, 977 N.W.2d 294 (internal citations omitted) (quoting *Holm v. Holm*, 2017 ND 96, ¶ 4, 893 N.W.2d 492).

[¶7]   The 2017 version of N.D.C.C. § 14-05-24(1), applicable in October 2020 when these proceedings began, states the following:

> When a divorce is granted, the court shall make an equitable distribution of the property and debts of the parties. . . . the valuation date for marital property is the date mutually agreed upon between the parties. If the parties do not mutually agree upon a valuation date, the valuation date for marital property is the date of service of a summons in an action for divorce or

separation or the date on which the parties last separated, whichever occurs first.

Property acquired after separation must not be included in the value of the marital estate. *Berdahl*, 2022 ND 136, ¶ 18.

[¶8] Heather Kitzan argues the district court erred in finding September 8, 2020 as the date of separation instead of her proposed date in June 2020. She argues "the [district court] without explanation chose Justun's date of separation for purposes of valuation." The summons for divorce was served upon Justun Kitzan on October 30, 2020. In finding September 8, 2020 the proper date for valuation, the court adopted an earlier date of separation over the date of service in accordance with N.D.C.C. § 14-05-24(1). The court found September 8, 2020 rather than June 2020 to be credible because both Justun Kitzan and his sister testified to that date, and the court found Heather Kitzan's testimony lacked credibility. The court was in the position to weigh testimony presented on this issue and made a finding by choosing one of two permissible views of the evidence. The finding was not induced by an erroneous view of the law, there is evidence to support the finding, and, after reviewing all the evidence, we are not left with a definite and firm conviction a mistake has been made.

### III

[¶9] Heather Kitzan argues that three bank accounts, *7773, *0409, and *9054, opened at Dakota Community Bank & Trust on December 12, 2020, March 31, 2021, and June 4, 2021, respectively, should be considered after-acquired property, and should not have been included within the marital estate. The district court found the funds were moved from existing accounts to newly opened accounts in an effort by Heather Kitzan to conceal assets and reduce the overall marital estate. The court found the following: "Heather states that she closed [*9919] and moved the money into [*7773]. However, Heather did not provide the Court documentation of this. Based upon Heather's moving and hiding of money, the Court finds her testimony not credible." Based on the findings that she had hidden money and her testimony was not credible, the court determined it was appropriate to credit the funds

in *9919 to Heather Kitzan and to be counted in her share of the marital estate. The court was in the position to weigh testimony presented on this issue and made a finding by choosing one of two permissible views of the evidence. The finding was not induced by an erroneous view of the law, there is evidence to support the finding, and, after reviewing all the evidence, we are not left with a definite and firm conviction a mistake has been made.

[¶10] Heather Kitzan also argues the district court's inclusion of her retirement accounts and the funds in the bank accounts *7773, *0409, and *9054 inflates the value of the marital estate allocated to her because the retirement funds were counted twice. Heather Kitzan removed $27,196.34 from her retirement account. She deposited those funds into account *7773. She then transferred $30,000 to account *9054, leaving a balance of $18,480.58 in account *7773. As a result, at least some of the retirement money was transferred from account *7773 to account *9054. Account *9054 included numerous credit and debit transactions by Heather Kitzan making it very difficult to determine how much of the retirement money, if any, was still "present" in the account at the date of valuation. She offered no accounting for those transfers. The court used a balance of $38,363.28 for account *9054. The district court chose valuations for those accounts that were within the range of the evidence presented. The finding was not induced by an erroneous view of the law, there is evidence to support the finding, and, after reviewing all the evidence, we are not left with a definite and firm conviction a mistake has been made.

IV

[¶11] Heather Kitzan argues the district court erred by reducing the $30,000 equity payment awarded to her because the mortgage of the marital home was in forbearance prior to trial. We have deemed it equitable to require a party to continue making mortgage payments until a home is sold if the *Ruff-Fischer* factors weigh in favor of that party bearing the cost. *Berdahl*, 2022 ND 136, ¶¶ 22-23. The court found, "Heather was ordered to pay the mortgage payment at the interim order. . . . At the time of trial, she was $14,480 behind in mortgage payments. . . . So, the Court is going to reduce any equity payment by the $14,480." The parties' interim order required Heather Kitzan to pay the

4

mortgage on the home and allocated to her the use of the home during the pendency of the divorce proceedings. Although the mortgage was in temporary forbearance, it was still accruing a balance that would have to be paid. We conclude the district court did not err in adjusting the allocation of the marital estate to account for unsatisfied debt payments required under the terms of the interim order.

V

[¶12] A trial court starts with a presumption that all property is marital whether held jointly or individually. *Berg v. Berg*, 2018 ND 79, ¶ 7, 908 N.W.2d 705. This includes inherited property. *Hitz v. Hitz*, 2008 ND 58, ¶ 14, 746 N.W.2d 732. "We have never held that property . . . acquired by gift or inheritance by one spouse, be irrevocably set aside to that spouse." *Id.* (quoting *Young v. Young*, 1998 ND 83, ¶ 10, 578 N.W.2d 111). The origin of the property is just one factor under the *Ruff-Fischer* guidelines. *Hitz*, at ¶ 14. When property is deeded to both spouses in a joint tenancy with rights of survivorship, this act destroys any separate ownership, and must be included in the marital estate. *Jangula v. Jangula*, 2005 ND 203, ¶¶ 15-16, 706 N.W.2d 85.

[¶13] Heather Kitzan argues the district court erred by including the farm property and accompanying mineral rights as part of the marital estate because it was property she had inherited. The record does not support this argument. Heather Kitzan's mother executed a quit claim deed of the farm property as "joint tenants with right of survivorship," and a mineral deed to both of the parties in 2017 during their marriage. The finding that the property was a marital asset was not induced by an erroneous view of the law, there is evidence to support the finding, and, after reviewing all the evidence, we are not left with a definite and firm conviction a mistake has been made. The district court did not err by including the assets in the marital estate.

VI

[¶14] This Court has said that "a property division need not be equal to be equitable, but a substantial disparity must be explained." *Berg,* 2018 ND 79, ¶

5

7 (quoting *Ulsaker v. White*, 2009 ND 18, ¶ 9, 760 N.W.2d 82). Along with N.D.C.C. § 14-05-24(1), the district court must also consider the *Ruff-Fischer* factors which include:

> [T]he respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

*Berg*, at ¶ 7 (quoting *Ulsaker*, at ¶ 9). "Economic fault and dissipation of assets are relevant factors the court may consider and are grounds for an unequal distribution." *Swanson v. Swanson*, 2019 ND 25, ¶ 12, 921 N.W.2d 666. "Economic misconduct is misconduct that results in a wasted asset or in the reduction of the net marital estate." *Id.* "A court's finding of economic or non-economic fault is a finding of fact subject to the clearly erroneous rule." *Id.*

[¶15] Here, the district court conducted a thorough analysis of the *Ruff-Fischer* factors. The court awarded Heather Kitzan an equity payment of $30,000 to be paid from Justun Kitzan's proceeds from the farm sale, for a total net marital estate allocation of $36,818.57 for Heather Kitzan and $68,111.47 for Justun Kitzan. In justifying the disparity, the court explained:

> This does result in a higher Net Estate to Justun. However, the Court finds this justified. From what the Court can see, there is at least $50,000 and probably closer to $100,000 that Heather has received in the last two years that is missing or could not be documented. The Court cannot tell if there is money being hidden somewhere or if Heather has a bad spending problem (bank account shows extreme spending on luxuries). Heather has received PPP loans, COVID Stimulus Money, Loans from the State of North Dakota, business money, cashed out her retirement,

6

money for the Farm, etc. Most of this cannot be tracked in the bank accounts and there was no documents on this being spent on expenses.

[¶16] The district court's finding that Heather Kitzan attempted to hide or spend approximately $50,000 to $100,000 from the marital estate is supported by the record. The court noted that Heather Kitzan did not provide receipts or accounting information for the money she frequently deposited from one account and then withdrew to either spend or deposit into another account. The court found the same discrepancies with her use of the PPP loans and grant from the State Water Commission. Heather Kitzan's insufficient explanations regarding those funds support the court's conclusion of financial misconduct. The missing or unaccounted for funds resulted in reduction of the net marital estate as is prohibited by *Swanson*, 2019 ND 25, ¶ 12. The findings explaining the disparity in the allocation of the marital estate were not induced by an erroneous view of the law, there is evidence to support the findings, and, after reviewing all the evidence, we are not left with a definite and firm conviction a mistake has been made.

## VII

[¶17] This Court reviews an award of spousal support as a finding of fact subject to the clearly erroneous standard of review. *Willprecht v. Willprecht*, 2021 ND 17, ¶ 7, 954 N.W.2d 707. Section 14-05-24.1(1), N.D.C.C., provides that a court may require a party to pay spousal support for a limited period of time. An analysis of the *Ruff-Fischer* factors is also required. *Berdahl*, 2022 ND 136, ¶ 7. "[T]he *Ruff-Fischer* guidelines allow a district court to consider the parties' conduct during the marriage, including fault." *Swanson,* 2019 ND 25, ¶ 12. "[B]oth economic and noneconomic fault are proper factors for the trial court to consider[.]" *Hitz*, 2008 ND 58, ¶ 15 (quoting *McDowell v. McDowell*, 2001 ND 176, ¶ 6, 635 N.W.2d 139). "Economic misconduct is misconduct that results in a wasted asset or in the reduction of the net marital estate." *Swanson*, at ¶ 12.

[¶18] Heather Kitzan argues the district court erred in determining that her financial mismanagement was misconduct and therefore "[weighed] against any award of spousal support." The court's findings that Heather Kitzan commingled personal, farm, and business funds, and attempted to hide or deplete assets after the divorce proceedings commenced are further evidence of misconduct. The court found the parties earned an almost identical monthly income. The court further found Heather Kitzan did not have a need for support and that Justun Kitzan did not have an ability to pay. The finding that an award of spousal support was not warranted was not induced by an erroneous view of the law, there is evidence to support the finding, and, after reviewing all the evidence, we are not left with a definite and firm conviction a mistake has been made.

VIII

[¶19] The district court's findings of facts regarding the date of separation, inclusion of certain property within the marital estate, the final property division between the parties, and the denial of spousal support were not clearly erroneous. The judgment is affirmed.

[¶20] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr