**FILED**
**IN THE OFFICE OF THE**
**CLERK OF SUPREME COURT**
**FEBRUARY 8, 2024**
**STATE OF NORTH DAKOTA**

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2024 ND 20

Stacey Jean Dimmler,  Plaintiff, Appellee, and Cross-Appellant

v.

Dustin Scott Dimmler,  Defendant, Appellant, and Cross-Appellee

and

State of North Dakota,  Statutory Real Party in Interest

## No. 20230154

Appeal from the District Court of Ramsey County, Northeast Judicial District, the Honorable Kari M. Agotness, Judge.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Opinion of the Court by Crothers, Justice, in which Chief Justice Jensen and Justices McEvers, Tufte and Bahr joined. Justice Tufte filed a concurring opinion, in which Chief Justice Jensen joined.

Ashley R. Heitkamp, Fargo, ND, for plaintiff, appellee, and cross-appellant.

Patti J. Jensen (argued) and Ashley A. Olson (on brief), East Grand Forks, MN, for defendant, appellant, and cross-appellee.

**Crothers, Justice.**

[¶1] Dustin Dimmler appeals and Stacey Dimmler cross-appeals from a district court's judgment granting them a divorce. Dustin Dimmler argues the court erred in valuing and distributing the marital estate, in making findings on primary residential responsibility, in calculating child support, and by refusing to remove a parenting investigator.

[¶2] Stacey Dimmler cross-appeals arguing the district court erred by not making child support retroactive to the date of the interim order, in not awarding her attorney's fees incurred during the divorce, and by not ordering Dustin Dimmler to repay her the cost of her parental capacity evaluation.

[¶3] We affirm in part, reverse in part, and remand.

I

[¶4] The Dimmlers married in June 2013, and have two children, E.J.D. and L.D.D. Stacey Dimmler filed for divorce in June 2021 and Dustin Dimmler counterclaimed for divorce and other relief.

[¶5] In August 2021, the district court held an interim hearing where it temporarily awarded primary residential responsibility to Stacey Dimmler, and reserved the issue of child support. In October 2021, Dustin Dimmler moved for the district court to appoint a parenting investigator. The court granted the motion, an investigator was appointed, and she published a report in March 2022. The divorce trial was set for April 2022 but was continued until October 2022 because of a medical emergency. During this period, Stacey Dimmler provided additional information to the parenting investigator despite earlier statements that the parties should not have further contact with the investigator.

[¶6] On June 30, 2022, the district court held a second interim hearing. In July 2022, the court issued the second interim order granting Dustin Dimmler

sole possession of the marital home and sole responsibility for the mortgage payment. In August 2022, Dustin Dimmler moved to remove the parenting investigator and strike her report because Stacey Dimmler provided additional information to the investigator after the deadline to do so. He alleged the parental investigator acted with bias. The court denied the motion and ordered the parenting investigator to continue. A second report was submitted in September 2022. The day before trial, parties learned that the parenting investigator also provided information to child protection services.

[¶7] In October 2022, the district court conducted a two-day trial, after which it granted Stacey Dimmler primary residential responsibility. Stacey and Dustin Dimmler received joint decision-making responsibility for the children. The court divided the marital estate, including land given to Dustin Dimmler. Dustin Dimmler's grandparents gave him and his brother approximately 912 acres of farmland, subject to the grantors' life estate and a secondary life estate by Mark Dimmler, Dustin Dimmler's uncle. Dustin Dimmler's parents purchased a Florida property and gave it to him and his brother. Both transactions occurred before Dustin and Stacey Dimmler married.

[¶8] The district court included the farmland and Florida property in the marital estate, but excluded debt secured by a mortgage on the farmland because the court considered it "non-marital." The court did not value the parties' personal property.

[¶9] The district court awarded Stacy Dimmler child support after finding Dustin Dimmler was underemployed and imputed his income. The court reiterated the interim order's finding that there would be no retroactive child support. The court found each party was responsible for their own attorney's fees, and were to split the parenting investigator's fees. Dustin Dimmler timely appealed and Stacey Dimmler timely cross-appealed.

II

[¶10] Dustin Dimmler argues the district court erred in valuing his remainder interest in the farmland because the court excluded the debt as non-marital.

2

He further argues the court erred in its valuation of the Florida property and the Dimmlers' personal property.

A

[¶11] "A district court's property valuations and division are findings of fact, which will not be reversed on appeal unless they are clearly erroneous." *Orwig v. Orwig*, 2021 ND 33, ¶ 22, 955 N.W.2d 34 (citing *Wald v. Wald*, 2020 ND 174, ¶¶ 11, 19, 947 N.W.2d 359). "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or, after reviewing the entire record, this Court is left with a definite and firm conviction a mistake has been made." *Wald*, at ¶ 11. "The district court's valuations depend on the evidence the parties present, and we presume the court's valuations are correct." *Orwig,* at ¶ 21. This Court gives deference to the "district court's credibility determinations." *Id.* at ¶ 22.

[¶12] A court must equitably distribute the marital estate to the parties. N.D.C.C. § 14-05-24(1); *see Berg v. Berg*, 2018 ND 79, ¶ 7, 908 N.W.2d 705 (the court must determine the value of the marital estate before equitably distributing to the parties). "A trial court starts with a presumption that all property is marital whether held jointly or individually," including inherited property. *Kitzan v. Kitzan*, 2023 ND 23, ¶ 12, 985 N.W.2d 717. This Court has "consistently held that property acquired before marriage must be included in the marital estate." *Neidviecky v. Neidviecky*, 2003 ND 29, ¶ 10, 657 N.W.2d 255. "While a court must consider all debt, it does not have to find that all claimed debt is, in fact, marital debt." *Dronen v. Dronen*, 2009 ND 70, ¶ 28, 764 N.W.2d 675.

[¶13] A remainder interest is non-possessory, but represents a value that must be included within the marital estate. *McCarthy v. McCarthy*, 2014 ND 234, ¶¶ 11-14, 856 N.W.2d 762. The value of a remainder interest in a marital estate may be valued using N.D. Admin. Code § 75-02-02.1-32. *Lee v. Lee*, 2019 ND 142, ¶ 7, 927 N.W.2d 104. This administrative code section guides the calculation of Medicaid eligibility when a life estate or remainder interest is involved, and provides a table allowing for calculation of the value of either a future or remainder interest. N.D. Admin. Code § 75-02-02.1-32(4)(c).

3

[¶14] A district court cannot equitably divide a marital estate without fully accounting for a remainder interest. N.D.C.C. § 14-05-24(1); *Lee*, 2019 ND 142, ¶ 7. Throughout this litigation Dustin Dimmler offered varying approaches to calculate the value of his remainder interest in the farmland. In a pre-trial brief he suggested calculating the value of his interests using actuarial tables, but did not provide the court with calculations for the farmland's value beyond the suggestion to use actuarial tables. Ultimately at trial, Dustin Dimmler argued his remainder interest had no value because it was a gift to him, the land was subject to a life estate, and the land was burdened with substantial debt secured by a mortgage on the property.

[¶15] The district court correctly rejected Dustin Dimmler's claim the farmland had no value because it was received as a gift and because he owned a remainder interest behind two life tenants. Those factors affect, but do not eliminate the farmland's value. At the same time, the court erroneously disregarded the debt by accepting Stacey Dimmler's argument that the mortgage was not "marital debt."

[¶16] By excluding all consideration of the debt, the district court over-valued Dustin Dimmler's interest in the farmland because it was encumbered by a mortgage. The court must take that debt into account to properly value and equitably divide the Dimmlers' marital estate. While not the exclusive means of calculation, N.D. Admin. Code § 75-02-02.1-32(4)(c) provides a way to value a marital estate with a remainder interest on a life estate when the real estate is encumbered with debt.

B

[¶17] Dustin Dimmler claims the district court erred in its valuation of the Florida real estate given to him and his brother by their parents.

[¶18] "Valuations of marital property within the range of the evidence presented are not clearly erroneous." *Berdahl v. Berdahl*, 2022 ND 136, ¶ 6, 977 N.W.2d 294.

4

[¶19] These proceedings began on June 18, 2021, with service of a summons, which predate a change in law governing when the marital estate is valued. The applicable version of the statute provides, "If the parties do not mutually agree upon a valuation date, the valuation date for marital property is the date of service of a summons in an action for divorce or separation or the date on which the parties last separated, whichever occurs first." N.D.C.C. § 14-05-24(1) (2017). The parties did not agree on an alternative valuation date. Thus, the district court properly used the 2017 version of N.D.C.C. § 14-05-24(1), June 18, 2021, the date of service of the summons, as the valuation date for the marital estate.

[¶20] Dustin Dimmler's parents purchased a rental property in Fort Meyers, Florida, and placed the property in Dustin Dimmler's and his brother's name on June 11, 2013. The brothers own the home as joint tenants. Neither party presented a value of the property as of June 18, 2021. On October 12, 2021, an appraiser valued the property at $208,000. Dustin Dimmler's father testified and did not contest the appraised value of the property. Dustin Dimmler argues his share of the Florida property is $78,000 because that was the value listed on the April 2022 Rule 8.3 statement.

[¶21] Based on the evidence presented, the district court found Dustin Dimmler's share of the Florida property was $104,000, and used that amount in its calculations. We affirm because the court's finding is within the range of evidence, and was not induced by an erroneous view of the law, evidence exists to support the finding, and, on the entire record, we are not left with a definite and firm conviction the court made a mistake.

C

[¶22] Dustin Dimmler alleges the district court erred in its valuation of personal property.

[¶23] "Valuations of marital property within the range of the evidence presented are not clearly erroneous." *Berdahl*, 2022 ND 136, ¶ 6. The parties valued their own personal property as zero or unknown. Dustin Dimmler valued Stacey Dimmler's personal property at $30,000. Stacey Dimmler valued

Dustin Dimmler's property as unknown. Because of uncertainty of the values, the district court did not place a value on the personal property. *See Bucholz v. Bucholz*, 2022 ND 203, ¶¶ 19, 22, 982 N.W.2d 275 (a court can find marital property does not have value if parties either show the items have little value or fail to provide evidence of a value). We affirm because the court's findings were not induced by an erroneous view of the law, evidence of value was lacking, and, on the entire record, we are not left with a definite and firm conviction the court made a mistake.

## III

[¶24] Dustin Dimmler argues the district court erred when it placed primary residential responsibility with Stacey Dimmler based on the children's best interests.

[¶25] "An award of primary residential responsibility is a finding of fact that will not be reversed on appeal unless it is clearly erroneous." *Doll v. Doll*, 2011 ND 24, ¶ 6, 794 N.W.2d 425. "A district court's decision on residential responsibility is a finding of fact subject to the clearly erroneous standard of review." *Queen v. Martel*, 2022 ND 178, ¶ 3, 980 N.W.2d 914. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence supports it, or if after reviewing the entire record, we are left with a definite and firm conviction a mistake has been made." *Id.* The district court must make findings of fact on the best interest factors under N.D.C.C. § 14-09-06.2(1). The court's findings of fact "must be stated with enough sufficient specificity to enable a reviewing court to understand the factual basis" for its decisions. *Doll,* at ¶ 8.

[¶26] The district court made findings on eleven of the best interest factors. The court found factors c, d, e and g favored Stacey Dimmler. The court found factors a, b, f, h, j, k and m favored neither party. The court found factors i and l did not apply to the Dimmlers.

6

A

[¶27] Dustin Dimmler argues the district court erred when it found factor a was neutral when evidence demonstrating his ability to provide guidance should have resulted in the factor favoring him. Factor a examines "The love, affection, and other emotional ties existing between the parents and child and the ability of each parent to provide the child with nurture, love, affection, and guidance." N.D.C.C. § 14-09-06.2(1)(a).

[¶28] The district court relied on testimony from friends, family, and the parenting investigator's testimony and report. The friends testified that both parents are good parents. Dustin Dimmler's sister-in-law testified that Stacey Dimmler did not discipline the children. Stacey and Dustin Dimmler told the parenting investigator that L.D.D. was attached to his mother more and E.J.D. was more attached to her father. The court found each parent had the ability to nurture their children and provide them with love, affection, and guidance. The finding was not induced by an erroneous view of the law, there is evidence to support the finding, and, after reviewing all the evidence, we are not left with a definite and firm conviction a mistake has been made.

B

[¶29] Dustin Dimmler argues the district court erred when it found factor b was neutral because the evidence demonstrated he had the ability to provide a safe environment and appropriate nutrition, and the weight of the evidence "demanded a conclusion that the Factor favored Dustin." Factor b examines "The ability of each parent to assure that the child receives adequate food, clothing, shelter, medical care, and a safe environment." N.D.C.C. § 14-09-06.2(1)(b).

[¶30] Dustin Dimmler testified Stacey Dimmler fed the children fast food meals, but the parenting investigator reported that Dustin Dimmler also fed E.J.D. fast food. Stacey Dimmler used a monkey jam to ensure L.D.D. stayed in bed at night because he has trouble sleeping. A monkey jam is a door locking mechanism to keep children in or out of a room. The district court found Stacey Dimmler removes the monkey jam at night. During these proceedings, L.D.D.

7

suffered from a medical issue that Dustin Dimmler argued shows Stacey Dimmler is not a fit parent. Text messages in evidence show both parents did not think it was an emergent issue. The finding was not induced by an erroneous view of the law, there is evidence to support the finding, and, after reviewing all the evidence, we are not left with a definite and firm conviction a mistake has been made.

C

[¶31] Dustin Dimmler claims the district court erred finding factor c favors Stacey Dimmler because he argues he prioritizes his children's needs and can provide for their current and future needs. Factor c examines "The child's developmental needs and the ability of each parent to meet those needs, both in the present and in the future." N.D.C.C. § 14-09-06.2(1)(c).

[¶32] The parenting investigator noted that both parents help the children with their hobbies and educational needs. The district court did note that Stacey Dimmler bathed herself and the two children together at the same time. The court also noted that the children would sleep with both parents. The court did not find these actions outside the norm of parenting.

[¶33] The district court considered a history of parental disputes including Stacey Dimmler's removal of family portraits from the marital home, using her non-marital name during social events, and posting "TikTok" videos on social media. The court also weighed Stacey Dimmler seeking therapy for E.J.D. during the divorce proceedings when both parents noticed changes in E.J.D., including arguing with Stacey Dimmler and showing symptoms of depression. "We do not re-weigh evidence or reassess credibility when there is evidence to support a trial court's findings." *Dickson v. Dickson*, 2001 ND 157, ¶ 29, 634 N.W.2d 76. Considering the varied and disputed evidence, the findings were not induced by an erroneous view of the law, there is evidence to support them, and, after reviewing all the evidence, we are not left with a definite and firm conviction a mistake has been made.

[¶34] Dustin Dimmler argues the district court erred by ignoring the importance of the children's relationship with his extended family, and therefore erred finding factor d favored Stacey Dimmler. Factor d considers "The sufficiency and stability of each parent's home environment, the impact of extended family, the length of time the child has lived in each parent's home, and the desirability of maintaining continuity in the child's home and community." N.D.C.C. § 14-09-06.2(1)(d).

[¶35] The district court found that Dustin Dimmler's extended family made several insensitive comments about Stacey Dimmler. Dustin Dimmler's brother did not get along with Stacey Dimmler during or after the marriage, which lead to derogatory comments aimed at Stacey Dimmler. Dustin Dimmler's mother called Stacey Dimmler "fat, crazy, and lazy." The court weighed the problems between Stacey Dimmler and Dustin Dimmler's family in its decision. The court reprimanded both families for actions during hearings and at trial. The findings were not induced by an erroneous view of the law, there is evidence to support the findings, and, after reviewing all the evidence, we are not left with a definite and firm conviction a mistake has been made.

E

[¶36] Dustin Dimmler claims that the district court erred finding factor e favors Stacey Dimmler, that the court took a "broad leap from a statement of a concerned parent to a determination that Stacey is more willing to cooperate, and coparent," and that the statement cannot be justified. Factor e has the court considering "The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child." N.D.C.C. § 14-09-06.2(1)(e).

[¶37] The district court found both parties have difficulty co-parenting. The findings include that Stacey Dimmler failed to follow the right of first refusal of parenting time and that Dustin Dimmler removed the children from daycare with little discussion with Stacey Dimmler. The evidence shows Stacey Dimmler used law enforcement to assist in picking up the children and both

parents have limited each other's ability to communicate by either blocking phone numbers or not using a central email for the children's activities.

[¶38] The district court found Stacey Dimmler used social media, primarily TikTok, to vent her frustrations during the divorce. The court also considered how Dustin Dimmler spoke negatively about Stacey Dimmler to his extended family in the presence of the children.

[¶39] The district court considered the parents' willingness to have the children spend time with both parents. Stacey Dimmler testified she allowed Dustin Dimmler to have more time with the children because of holidays, work events, and if she knew that her schedule caused her to be late coming home. She testified she intended to offer Dustin Dimmler more time with the children. Dustin Dimmler testified he plans to continue the fight to have equal parenting time with the children. Based on the record, the court's findings are not induced by an erroneous view of the law, evidence supports the findings, and we are not left with a definite and firm conviction a mistake has been made.

F

[¶40] Dustin Dimmler claims the district court erred finding factor g slightly favors Stacey Dimmler. He argues his mental health problems occurred only because Stacey Dimmler alleged he was unfaithful during the marriage, and she cannot question his mental health while hers is poor as well. Factor g considers "The mental and physical health of the parents, as that health impacts the child." N.D.C.C. § 14-09-06.2(1)(g).

[¶41] The district court found Stacey and Dustin Dimmler have mental health problems. Stacey Dimmler testified she receives medical treatment, uses medications, and attends therapy. She also uses medical marijuana when needed. To help her sleep, she uses sleep aids when the children are present. The court also found Dustin Dimmler contemplated self-harm when Stacey Dimmler alleged marital infidelity during their marriage. Dustin Dimmler went to his family farm, thought about self-harm, and decided against it. The

10

court heard testimony about Dustin Dimmler losing his job as a helicopter pilot because of stress and complaints from other team members.

[¶42] The parental investigator recommended Stacey and Dustin Dimmler participate in a parental capacity evaluation. Stacey Dimmler participated. Dustin Dimmler did not. He cited the parenting capacity evaluation costs too much money and tried to find someone else who could perform the evaluation for less than $5,000. He argued that his Federal Aviation Administration mandated mental health examination should suffice and replace the need to participate in a parental capacity evaluation. The district court found the FAA mandated health examination does not measure his ability to parent children. The findings on factor g were not induced by an erroneous view of the law, evidence supports the findings, and, after reviewing all the evidence, we are not left with a definite and firm conviction a mistake has been made.

G

[¶43] Dustin Dimmler claims the district court erred when it found factor h was neutral when the evidence "demanded a conclusion" the factor favored him. Factor h examines "The home, school, and community records of the child and the potential effect of any change." N.D.C.C. § 14-09-06.2(1)(h).

[¶44] The district court found factor h is neutral. Stacey Dimmler testified she would move when she no longer felt safe in Devils Lake. Dustin Dimmler plans to keep the children in the marital home and community and does not plan to move from Devils Lake. Dustin and Stacey Dimmler, evidenced by the parenting investigators report, are active in the children's activities. The finding that factor h is neutral was not induced by an erroneous view of the law, evidence supports the finding, and, after reviewing all the evidence, we are not left with a definite and firm conviction a mistake has been made.

H

[¶45] Dustin Dimmler claims "the district court erred when it wholly disregarded factor (i) because EJD had a definite preference." Factor i allows the court to "give substantial weight to the preference of the mature child."

11

N.D.C.C. § 14-09-06.2(1)(i). "The court also shall give due consideration to other factors that may have affected the child's preference, including whether the child's preference was based on undesirable or improper influences." *Id.*

[¶46] The district court found that factor i did not apply. E.J.D. did not testify. A child therapist testified that E.J.D. is "very smart, she's very intuitive, she has some insight that I would say is maybe beyond her years. She struggles with some things." The therapist indicated that E.J.D. will pick up emotions from Stacey Dimmler. The therapist testified that a child could voice their opinion to a judge, but the therapist opined that "I don't think it's okay that they be part of the decision because I would never want a patient to feel guilty for a decision that is made later." The parenting investigator noted that E.J.D. parrots Dustin Dimmler's phrases and talking points during her report. On this record, the court's finding on factor i was not induced by an erroneous view of the law, evidence supports the finding, and, we are not left with a definite and firm conviction a mistake has been made.

I

[¶47] Dustin Dimmler claims the district court erred when it found factor m was neutral and when it failed to address additional items. This factor invites consideration of "Any other factors considered by the court to be relevant to a particular parental rights and responsibilities dispute." N.D.C.C. § 14-09-06.2(1)(m).

[¶48] Dustin Dimmler claims the district court did not adequately evaluate the importance of his family and the children's relationship with them. The court made findings about the extended family's impact on the children under factor d. Findings under that factor were not clearly erroneous. We also do not reweigh trial court evidence or second guess how the court weighed the evidence. *Doll*, 2011 ND 24, ¶ 6. Therefore, we conclude the court's treatment of factor m was not clearly erroneous.

12

[¶49] Dustin Dimmler claims the district court erred in calculating his child support obligation by imputing his income.

[¶50] "The standards of review used in child support determinations vary, depending on the issue appealed." *Wisnewski v. Wisnewski*, 2020 ND 148, ¶ 51, 945 N.W.2d 331. "Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review." *Id.* "Determination of whether an individual is underemployed is within the discretion of the trial court." *Torgerson v. Torgerson*, 2003 ND 150, ¶ 10, 669 N.W.2d 98.

## A

[¶51] Dustin Dimmler argues the district court erred by considering his income at the time of the trial, and imputing additional income because he was underemployed.

[¶52] "An obligor's ability to pay child support is not solely determinable from actual income, and an obligor's earning capacity also can be utilized." *Bucholz v. Bucholz*, 1999 ND 36, ¶ 13, 590 N.W.2d 215. "Child support determinations are governed by the child support guidelines, N.D. Admin. Code ch. 75-02-04.1." *Brew v. Brew*, 2017 ND 242, ¶ 24, 903 N.W.2d 72. "Each child support order must include a statement of the net income of the obligor used to determine the child support obligation, and how that net income was determined." N.D. Admin. Code § 75-02-04.1-02(9).

[¶53] "An obligor is presumed to be underemployed if the obligor's gross income from earnings is less than the greater of" either "a monthly amount equal to one hundred sixty-seven times the federal hourly minimum wage" or "six-tenths of this state's statewide average earnings for persons with similar work history and occupational qualifications." N.D. Admin. Code § 75-02-04.1-07(2). "Before a court can find an obligor is underemployed and impute his

income, the court must first determine the obligor's gross income from earnings." *Schrodt v. Schrodt*, 2022 ND 64, ¶ 22, 971 N.W.2d 861. "Income must be sufficiently documented through the use of tax returns, current wage statements, and other information to fully apprise the court of all gross income." N.D. Admin. Code § 75-02-04.1-02(7).

[¶54] If a parent is underemployed the district court must determine gross income from the earning capacity "equal to the greatest of subdivisions a through c" less actual gross earnings. N.D. Admin. Code § 75-02-04.1-07(3). These subdivisions include:

> "a. A monthly amount equal to one hundred sixty-seven times the hourly federal minimum wage.
> b. An amount equal to six-tenths of this state's statewide average earnings for persons with similar work history and occupational qualifications.
> c. An amount equal to ninety percent of the obligor's greatest average gross monthly earnings, in any twelve consecutive months included in the current calendar year and the two previous calendar years, for which reliable evidence is provided."

*Id.*

[¶55] The district court set Dustin Dimmler's child support at $1,462 per month based on imputed income of $90,516 per year. Dustin Dimmler claims his child support should have been based on his gross income of $57,093 per year as a health equity coordinator.

[¶56] The district court found that, from 2008 to August 2021, Dustin Dimmler was a helicopter pilot and his current wages were less than the statewide average for a commercial pilot. The court found under N.D. Admin. Code § 75-02-04.1-07(3)(a) that Dustin Dimmler's annual gross income based on minimum wage would be $14,532. The court also found under N.D. Admin. Code § 75-02-04.1-07(3)(b) that the statewide average annual gross income for a commercial pilot is $99,860. The court found six-tenths of $99,860 is $59,916. *Id.* Dustin Dimmler is presumed underemployed because his current gross income is less than this amount. Under subsection (c), the court found Dustin

14

Dimmler's annual gross income was $91,996 in 2019, $100,574 in 2020, and $63,075 in 2021. The court found 2020 was the highest earnings year for Dustin Dimmler and calculated 90% of $100,574, or $90,516.60. N.D. Admin. Code § 75-02-04.1-07(3)(c). The court found the amount calculated under N.D. Admin. Code § 75-02-04.1-07(3)(c) applicable because it is the greatest of Dustin Dimmler's earnings.

[¶57] The district court did not clearly err in finding facts regarding Dustin Dimmler's income. The court did not abuse its discretion by finding Dustin Dimmler was underemployed and subsequently finding his child support obligation was $1,462 per month.

B

[¶58] Dustin Dimmler claims the district court clearly erred by imputing higher income and causing his child support obligation to increase. He argues he was adequately employed at the time of trial because he obtained work as soon as possible after he lost his pilot job.

[¶59] Under N.D. Admin. Code § 75-02-04.1-07(5) an underemployed obligor must show employment opportunities "would provide earnings at least equal to the lesser of the amounts determined under subdivision b or c of subsection 3, are unavailable within one hundred miles [160.93 kilometers] of the obligor's actual place of residence," or the district court must impute the obligor's income "based on earning capacity equal to the amount determined under subdivision a of subsection 3, less actual gross earnings." Imputing income is not required if the obligor shows jobs that would allow him to earn an "amount equal to six-tenths of the state's statewide average earnings for persons with similar work history and occupational qualifications" are unavailable or the obligor shows the unavailability of jobs that would allow him or her to earn 90% of his or her greatest consecutive twelve month period within the last two years. N.D. Admin. Code § 75-02-04.1-07(3)(b) and (c); *see also Updike v. Updike*, 2022 ND 99, ¶ 7, 974 N.W.2d 360 (interpreting the administrative code exceptions to imputing income). The obligor has the burden to establish an exception. *Verhey v. McKenzie*, 2009 ND 35, ¶ 11, 763 N.W.2d 113.

[¶60] Dustin Dimmler did not establish that he met an exception for imputed income. He argues that working at the Lake Region District Health Unit "was the single position available within the area." Stacey Dimmler provided a June 2023 job listing for a pilot based in Grand Forks, within 100 miles of Devils Lake. However, the employer posting the position was the same one that released Dustin Dimmler from employment in August 2021.

[¶61] This Court ruled on two comparable cases in *Rathbun v. Rathbun*, 2017 ND 24, 889 N.W.2d 855; and *Updike,* 2022 ND 99. In *Rathbun,* the obligor testified he applied for 61 jobs but was unable to obtain any of them because of the economic downturn in the oilfield. *Rathbun*, at ¶ 9. This Court concluded the district court erred by not finding the obligor met the exception for being underemployed. *Id.* Unlike in *Rathbun,* in *Updike* the obligor stated he accepted a job outside the oilfield, but did not supply evidence that other jobs requiring his work history or qualifications were available. *Updike*, at ¶¶ 10-11. This Court concluded the district court did not err in finding the obligor failed to provide adequate evidence that he could not obtain a job within his field. *Id.* at ¶ 11.

[¶62] Dustin Dimmler's evidence aligns more with *Updike* than *Rathbun* because he found a job in the area, but did not show why he could not find employment within his qualified field or his required level of qualification. On this record, the district court did not abuse its discretion by imputing Dustin Dimmler's wages. Moreover, the court's findings were not induced by an erroneous view of the law, evidence supports the findings, and this Court is not left with a definite and firm conviction the district court made a mistake.

V

[¶63] Dustin Dimmler claims the district court erred by not removing the parenting investigator from the case. He argues the parenting investigator did not remain impartial during the proceedings by participating in ex parte communications with Stacey Dimmler. He also alleges the parenting investigator breached confidentiality when she supplied documents to child protection services.

16

[¶64] We review a "district court's decision on a motion in limine for an abuse of discretion." *State v. Bowen*, 2023 ND 25, ¶ 12, 985 N.W.2d 636. "A district court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner or if it misinterprets or misapplies the law." *Id*. "We emphasize the importance of parenting investigators strictly adhering to the Code of Conduct when rendering their services—at all stages of their involvement with a case." *Morris v. Moller*, 2012 ND 74, ¶ 16, 815 N.W.2d 266. "A parenting investigator shall preserve professional independence in the discharge of the investigator's duties. An investigator should act in accordance with the law, free from all influence, rendering investigative services based upon the investigator's best knowledge." N.D.R. Ct. Appendix G. "All parenting investigators shall maintain confidentiality and protect against unauthorized disclosure and usage of information acquired in connection with the investigation." *Id*.

[¶65] The district court heard testimony regarding the parenting investigator's reports. The court found the parenting investigator made and delivered the first report 30 days before the tentative start of trial. The court continued the trial from April 26, 2022, to October 13, 2022. Between June 2 and June 7, 2022, Stacey Dimmler provided additional information to the parenting investigator. In August 2022, Dustin Dimmler moved to remove the parenting investigator or prohibit the parenting investigator's involvement, claiming she became biased. The court ordered the parenting investigator to continue serving, and denied Dustin Dimmler's motion to remove the investigator. The order was based in part on a finding that the investigator's continued investigation is "necessary to determine the best interests of the children."

[¶66] Also relevant to this issue is that Dustin and Stacey Dimmler signed an authorization allowing the parenting investigator to release information to the Eastern Plains Human Service Zone. *See* N.D.R. Ct. Appendix G (a parenting investigator must ensure that there is no unauthorized disclosure of information). The child protection services agent worked in that office. Dustin and Stacey Dimmler's releases included authorization to provide information to child protective services. Therefore, the district court did not abuse its

discretion by permitting the exchange of documents between Stacey Dimmler and the parenting investigator, or by allowing the parenting investigator to continue serving.

## VI

[¶67] Stacey Dimmler argues the district court abused its discretion by not ordering child support retroactive to the date of her motion requesting child support.

[¶68] Our standard of review for child support determinations is mixed. "[Q]uestions of law . . . are subject to the de novo standard of review, findings of fact . . . are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review." *Grossman v. Lerud*, 2014 ND 235, ¶ 6, 857 N.W.2d 92. "A district court has discretion to decide the appropriate effective date of an order modifying a child support obligation and whether the effective date should be the date the motion was filed or some later effective date." *Norberg v. Norberg*, 2014 ND 90, ¶ 40, 845 N.W.2d 348 (citing *Wagner v. Wagner*, 2007 ND 101, ¶ 28, 733 N.W.2d 593). "A district court's decision whether to award past child support is discretionary and will not be overturned unless the court abuses its discretion." *Rebel v. Rebel*, 2013 ND 116, ¶ 20, 833 N.W.2d 442.

[¶69] The district court's first order did not award child support but "reserved [it] in the interim." The court reserved the issue because Dustin Dimmler recently lost his job as a helicopter pilot. Despite not awarding interim support, Stacey and Dustin Dimmler shared the expenses of the marital home until the court's second interim order. Prior to the second interim order, Dustin and Stacey Dimmler notified each other of their monthly expenses and the party who paid the lesser amount then paid the other party an equalizing payment. These equalizing payments tended to be small, ranging from $70 to $80. Dustin Dimmler made mortgage payments and Stacey Dimmler paid the children's living expenses. Stacey Dimmler lived in the marital home between the two interim orders because Dustin Dimmler had access to more housing options. Stacey Dimmler did not receive any equity in the home, but lived in the home until the second interim order.

18

[¶70] After the second interim order Dustin Dimmler paid the mortgage and resided in the marital home. The district court did not receive evidence or make findings on any disparity in amounts paid by the respective parties during the interim, or any equity increase in the home Dustin Dimmler received as a result of the interim financial arrangements. On this record, and in view of the other shared expenses, the court did not abuse its discretion by not ordering retroactive child support payments.

## VII

[¶71] Stacey Dimmler argues the district court abused its discretion by not ordering Dustin Dimmler to pay her attorney's fees. This Court has held: "The district court has broad discretion to award attorney's fees in divorce proceedings under N.D.C.C. § 14-05-23." *Brew v. Brew*, 2017 ND 242, ¶ 32, 903 N.W.2d 72 (cleaned up). We have said the primary standard for awarding attorney's fees under N.D.C.C. § 14-05-23 is consideration of one spouse's needs and the other spouse's ability to pay. *Id.* However, we have also recognized attorney's fees may be appropriate "where a party's actions have unreasonably increased the time spent on a case." *Id.* "A district court's award of attorney's fees will not be disturbed on appeal unless the appealing party establishes the court abused its discretion." *Tuhy v. Tuhy*, 2018 ND 53, ¶ 17, 907 N.W.2d 351.

[¶72] The district court found that Dustin and Stacey Dimmler should pay their own attorney's fees. Stacey Dimmler argues Dustin Dimmler prolonged the divorce proceedings causing increased fees, but failed to establish how the court abused its discretion by not awarding her attorney's fees. The district court did not abuse its discretion when it found the parties are to pay their own attorney's fees.

## VIII

[¶73] Stacey Dimmler argues the district court erred by not requiring Dustin Dimmler to reimburse her $5,000 for the fees she spent obtaining a parental capacity evaluation. Her request for this relief was contained in her "proposed asset/debt distribution," as "Parental Capacity Evaluation Reimbursement - $5,000." Reimbursement of the evaluation fees were sought as part of a larger

request for recovery of "additional monies owed by Dustin," including her half of parenting investigator fees, appraisal fees, rent reimbursement and "$15,000 in Conduct Based Attorney's Fees."

[¶74] "An award of costs, including expert witness fees, lies within the sound discretion of the district court." *Hager v. City of Devils Lake*, 2009 ND 180, ¶ 57, 773 N.W.2d 420. When a court assesses costs and fees, it "must consider the overall financial circumstances of the parties and whether either party's actions have unreasonably increased the expenditures in the case." *Berg v. Berg*, 2000 ND 36, ¶ 22, 606 N.W.2d 895, *superseded by statute* N.D.C.C. § 14-05-22. "The court shall enter an order for the costs of any such investigation against either or both parties." N.D.C.C. § 14-09-06.3(4) (2021).[1]

[¶75] "A court has discretion to award fees against either or both parties, the court's decision on the matter will not be reversed on appeal absent an abuse of discretion." *Horsted v. Horsted*, 2012 ND 24, ¶ 15, 812 N.W.2d 448. "A district court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner or if it misinterprets or misapplies the law." *Bowen*, 2023 ND 25, ¶ 12.

[¶76] In February 2022, the parenting investigator requested that both parties have a parental capacity evaluation. Stacey Dimmler obtained the evaluation. Dustin Dimmler did not. Stacey Dimmler requested that Dustin Dimmler reimburse her $5,000, the cost of the evaluation because Dustin Dimmler refused to obtain an evaluation. Dustin Dimmler claimed his annual FAA mental health checks are comparable to a parenting capacity evaluation.

[¶77] To the extent Stacey Dimmler's claim for reimbursement of the $5,000 are viewed as recovery of costs or fees, we have not been shown how the district court acted in an arbitrary, unreasonable or unconscionable manner. Therefore, the court did not abuse its discretion in not awarding recovery of the fee paid by Stacey Dimmler for her evaluation. To the extent Stacey

---

[1] N.D.C.C. § 14-09-06.3(4) was revised in 2023 to eliminate this sentence, but the revision was not codified until after the trial and order for judgment occurred in this matter.

Dimmler's claim for reimbursement of the $5,000 are part of the overall division of the marital estate, we have not been shown how the court's division was clearly erroneous. We therefore affirm denial of Stacey Dimmler's request that she recover the parental capacity evaluation fees she expended.

IX

[¶78] The district court erred when it did not include the life estate's debt in calculating the value of Dustin Dimmler's remainder interest in the farmland. The court did not err when it valued the Florida property and the parties' personal property. The court did not err when it applied the best interest factors and found primary residential responsibility should be placed with Stacey Dimmler. The court did not err or abuse its discretion when it found Dustin Dimmler was underemployed and imputed income to calculate child support payments. The court did not abuse its discretion in denying the motion in limine to remove the parenting investigator. The court did not abuse its discretion when it refused to retroactively award child support to Stacey Dimmler. The court did not abuse its discretion in denying attorney's fees or reimbursement of Stacey Dimmler's fees incurred to obtain a parental capacity evaluation.

[¶79] We affirm in part, reverse in part, and remand for further proceedings to properly evaluate the farmland's value and to equitably divide the marital estate.

[¶80]  Jon J. Jensen, C.J.
       Daniel J. Crothers
       Lisa Fair McEvers
       Jerod E. Tufte
       Douglas A. Bahr

**Tufte, Justice, concurring.**

[¶81] I join the majority opinion in full.

[¶82] Reaching an accurate valuation of a life estate or remainder interest requires answering an actuarial question dependent on the life expectancy of

21

the life tenant. N.D. Admin. Code § 75-02-02.1-32(4)(c). The district court correctly started with an appraisal of the farmland as a fee simple interest. Aided by the parties, it then considered that Dustin Dimmler has only a partial remainder interest subject to multiple life estate interests. The youngest life tenant as of the valuation date was 58 years old. The court's findings relating to the value of an unencumbered partial remainder interest are well explained and supported by the record.

[¶83] The administrative code table the district court relied on to value the remainder interest does not appear to have straightforward application to the encumbrance at issue here. Unlike the complicated analysis the court applied to value the partial remainder interest, the court's analysis of the debt was uncomplicated by the multiple contingencies that affect Dustin Dimmler's interest in the land. The court reasoned that Dustin and Stacey Dimmler were not obligated to pay the debt, did not guarantee the debt, and had not contributed to service the debt. On that basis, the court determined the debt was not a marital debt and did not further consider it.

[¶84] The greater the burden of encumbrances on a property, the less a disinterested buyer will pay for an interest in the property. *See Hoverson v. Hoverson*, 2001 ND 124, ¶ 12, 629 N.W.2d 573. Where there is debt encumbering the entire property but only the life tenant is obligated to make payments, the question of how to account for the debt's effect on the remainder interest is also an actuarial question. Ultimately the valuation depends on the likelihood that the remainderman will receive the property before the debt is satisfied. Here, this question concerns the life expectancy of the life tenant who is obligated to pay the debt. If the life expectancy of the debtor life tenant is much longer than the remaining term on the debt and there is no other reason to doubt continuation of regular payments by the life tenant, the likelihood is that the debt will be satisfied before the remainder interest matures. Of course, there may be potential circumstances other than death of the life tenant that would prevent discharge of the debt before the remainderman succeeds to ownership. The record contains information about the life tenants, the terms of the life estate deeds, and the terms of the debt sufficient to make findings on the extent to which the debt encumbering the farmland affected its value as

22

of the valuation date. For purposes of valuing the remainder interest, the court's finding that the debt burdening the land is not a marital debt is not clearly erroneous. It is clearly erroneous to further find that the total outstanding encumbrance of $504,122.67 has no effect on the value of Dustin Dimmler's remainder interest.

[¶85] Jerod E. Tufte
      Jon J. Jensen, C.J.